**Dennis Rosa COLLAZO,
Petitioner–Appellant,**

v.

**Wayne ESTELLE, Warden, California
Mens Colony, Respondent–Appellee.**

**No. 88–2443.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 8, 1989.

Decided Sept. 1, 1989.

As Amended March 14, 1990.

As Amended May 8, 1990.

Rehearing En Banc Ordered
May 30, 1990.

---

William D. Farber, San Rafael, Cal., for petitioner-appellant.

John K. Van de Kamp, Atty. Gen., for the State of Cal., Steve White and John H. Sugiyama, Asst. Attys. Gen., and Martin S. Kaye and Aileen Bunney, Deputy Attys. Gen., San Francisco, Cal., for respondent-appellee.

Before FARRIS, THOMPSON and TROTT, Circuit Judges.

FARRIS, Circuit Judge:

Dennis Collazo appeals from the denial of his petition for a writ of habeas corpus. He argues that incriminating statements which he made while in custody should have been excluded at trial because they were the product of police coercion. We affirm.

On September 27, 1982, Collazo was arrested in connection with a fatal shooting and was taken to an interrogation room at the San Jose police station. After two police officers advised him of his rights under *Miranda,* Collazo requested to confer with counsel. The police twice told Collazo that things "might be worse" for him if he did not cooperate, and that he might be charged with murder. The police then promptly terminated the interrogation. Three hours later, after speaking with his wife, Collazo initiated further discussions with the police and confessed to his role in the shooting. Collazo's confession was admitted into evidence over his objection at trial. He was convicted of felony murder, burglary, and conspiracy, and was sentenced to 26 years imprisonment.

In *Colorado v. Spring,* 479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987), the Supreme Court stated the following test for determining whether a suspect's *Miranda* rights have been validly waived:

First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.

The *Spring* test has been satisfied. Although the police officers' comments were no doubt improper, the state court found, after conducting a full evidentiary hearing, that Collazo's subsequent initiation of talks with the police was not the "product" of the earlier impropriety. Our own review of the record convinces us that the state court was correct.

We have an independent duty to subject the question of the voluntariness of the defendant's confession to "plenary federal review." *See Miller v. Fenton*, 474 U.S. 104, 115, 106 S.Ct. 445, 452, 88 L.Ed.2d 405 (1985). The Government had the burden of proving that the defendant's decision to confess was made independently of any police coercion. We have carefully reviewed the evidence and we hold that the Government has met that burden and has shown that the defendant's confession was voluntary.

Collazo had a prior criminal history, and was experienced in the routine of police interrogation. He was a paid informant of the DEA. There was a lapse of approximately three hours between the first interrogation session and Collazo's subsequent confession. Collazo conferred with his wife in the interim. Finally, at the time of his confession, Collazo stated that he was not acting under pressure of any promise or threat. Based on the "totality of the circumstances," *Spring*, 479 U.S. at 573, 107 S.Ct. at 857, we conclude that Collazo freely and voluntarily waived his fifth amendment rights.

The brightline rule of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), has also been satisfied. *Edwards* requires that "an accused, ... having expressed his desire to deal with police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges or conversations with the police.*" *Id.* at 484, 101 S.Ct. at 1884 (emphasis added). Since we hold that Collazo initiated the subsequent talks free from the taint of the earlier improprieties, Collazo's confession does not run afoul of *Edwards*.

We also agree with Judge Trott that the policemen's statements to Collazo after he had invoked his right to remain silent, and before the police terminated the interrogation, constituted "interrogation" under *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). "But that is not the end of the inquiry. It must also be established that a suspect's incriminating response was the *product* of words or actions on the part of police...." *Id.* at 303, 100 S.Ct. at 1691 (emphasis added).

The evidence in the record establishes no causal link between Collazo's confession and the prior conduct of the police.

AFFIRMED.

TROTT, Circuit Judge, dissenting:

I respectfully dissent. This case involves unmitigated and glaring police misconduct designed to undercut the *Miranda* warnings to which Collazo was entitled. In one breath the police told him he had certain rights, but in the next—when Collazo indicated he wished to avail himself of those rights—he was told that if he exercised them, he might be penalized for doing so. Here is the post advice of rights exchange as it was recorded on tape:

Collazo: Can, I talk, you know, talk, talk to a lawyer?

Destro: This is your last chance to talk to us, though. You understand that. Once you get a lawyer, he's gonna say forget it. You know, don't talk to the police. Then it might be worse for you.

Collazo: Pardon me.

Destro: Then it might be worse for you.

Collazo: Why?

Destro: Because, ah, you know, there's other people in this thing, and we would like to get everybody. If you don't want to talk about, uh—

Rolen: Well, he's asked for a lawyer, so why don't we, I guess we'll leave our interview right here.

Collazo: If, ah, if ah, this gonna be difficult for you, you know, for me it means a lot, you know.

Destro: If you're arrested for murder, it does mean a lot.

The police then departed, leaving Collazo to ponder whether he could afford to exercise his constitutional rights. Three hours later, and still in the interview room where he had been left, Collazo called back the police. He then abandoned his request for a lawyer, allegedly waived his rights, and confessed.

The ultimate question for us to resolve is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution...." The same case that frames this question for us, *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 450, 88 L.Ed.2d 405 (1985), also mandates that this is a "matter for independent federal determination." *Id.* at 412, 106 S.Ct. at 451. The court in *Miller*

rejected the argument that the voluntariness of a confession is a factual issue and that state court findings of fact shall be presumed to be correct in a federal habeas corpus proceeding, pointing out that "[f]or several reasons we think that it would be inappropriate to abandon the court's long-standing position that the ultimate question of the admissibility of a confession merits treatment as a legal inquiry requiring plenary federal review." *Id.* at 115, 106 S.Ct. at 452.

In my view, the threat of "things going worse" for Collazo if he relied on his rights caused him to abandon his request for a lawyer, as he so testified in a futile attempt to suppress his confession. There is nothing in the record that explains his change of mind, except the weight of the explicit threat hanging over his head. Nothing. The prosecution failed utterly to carry its heavy burden in this respect of demonstrating a break in the causal connection between the threat and the so-called waiver and subsequent confession. Neither the passage of three hours, a talk with his wife, his previous experience as an informer, nor his predictable formalistic denial that he was motivated by threats convinces me that his subsequent waiver was the product of anything other than flagrant police misconduct. Collazo obviously didn't want things to go worse for him if he talked to a lawyer and relied on his right to remain silent, so he talked to the police—who had no business whatsoever making representations regarding the eventual outcome of legal proceedings without first talking to a prosecutor. The irony is that the inducement in the threat made by the police to Collazo to get him to talk was false. By talking to the police and giving up both his right to consult with a lawyer and his right to remain silent, not only did things *not go better* for Collazo, as the police intimated they would, but he talked himself right into a conviction of first degree murder and a sentence of 26 years to life. How could it have been much worse?

It also strikes me that the quoted dialogue between Collazo and Officer Destro runs afoul of *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980) which points out that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Under this definition, Destro's threatening response to Collazo's request to talk to a lawyer amounts purely and simply to interrogation, and to interrogation prohibited by *Miranda* itself. As I see it, Destro's statements to Collazo were not only "improper," as conceded by the majority, but they constituted an outright violation of *Miranda* as well as *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (requiring the police to respect immediately the evocation by a suspect of his rights). I fail to see any way that it can be said that Destro's conduct did not amount to a prohibited "practice that the police should know is reasonably likely to evoke an incriminating response from a suspect...." *Rhode Island v. Innis,* 446 U.S. at 301, 100 S.Ct. at 1689.

With all due respect to my colleagues, I see this case as inconsistent with the collective teaching of *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1984) ("... without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."), *Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979) ("First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."), *United States v. Tingle,* 658 F.2d 1332 (9th Cir.1981) (condemning the process of inducing a confession by describing the negative consequences of refusing to cooperate with investigators), and *Colorado v. Spring,* 479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987) ("only if the 'totality of the circumstances surrounding the interrogation' reveal ... an uncoerced choice ... may a court properly conclude that the *Miranda* rights have been waived."); and I have my doubts that it could even have survived pre-*Miranda* review under *Haynes v. Washington,* 373 U.S. 503, 513, 83 S.Ct. 1336, 1343, 10 L.Ed.2d 513 (1963) ("[A] confession obtained by police through the use of threats is violative of due process.... '[T]he question in each case is whether the defendant's will was overborne at the time he confessed.' ").

*Miranda* has been the law since 1966. The overwhelming number of law enforce-

ment officers in our country abide faithfully by its requirements even though it sometimes frustrates their job. Periodically, some persons in law enforcement, as well as certain legal scholars, call for the abandonment by the Supreme Court of *Miranda*'s requirements. But, as long as it is the law of the land, it must be respected. It was not honored in this case; in fact, it was egregiously disobeyed. Moreover, under no circumstances can it be said that this error of admitting Collazo's confession in evidence was harmless under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

This case grates against one of the enduring observations of our jurisprudential history—Justice Brandeis' timeless dissenting remarks in *Olmstead v. United States*, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928):

> Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the laws scrupulously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a law-breaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.

In my view, the petition should be granted and the writ of habeas corpus should issue.

Before GOODWIN, Chief Judge, BROWNING, WALLACE, HUG, TANG, SCHROEDER, FLETCHER, FARRIS, PREGERSON, ALARCON, POOLE, NELSON, CANBY, NORRIS, REINHARDT, BEEZER, HALL, WIGGINS, BRUNETTI, KOZINSKI, NOONAN, THOMPSON, O'SCANNLAIN, LEAVY, TROTT, FERNANDEZ, and RYMER, Circuit Judges.

Upon the vote of a majority of nonrecused regular active judges of this court, it is ordered that this case be reheard by the en banc court pursuant to Circuit Rule 35–3.