USCA1 Opinion

 

 October 5, 1992 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1096 WILLIAM NADWORNY, Petitioner, Appellant, v. MICHAEL FAIR, COMMISSIONER OF CORRECTIONS, Respondent, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ ____________________ Before Torruella and Stahl, Circuit Judges, ______________ and Hornby,* District Judge. ______________ ____________________ Charles M. Burnim for appellant. _________________ LaDonna J. Hatton, Assistant Attorney General, with whom Scott __________________ _____ Harshbarger, Attorney General, was on brief for appellee. ___________ ____________________ ____________________ _____________________ * Of the District of Maine, sitting by designation. STAHL, Circuit Judge. On July 20, 1982, approximately four months STAHL, ______________ after she failed to return home from an evening visit with appellant William Nadworny, Lisa Belmonte's decomposed body was found in the trunk of Nadworny's automobile. Almost two years later, on June 12, 1984, a Massachusetts Superior Court jury found Nadworny guilty of second degree murder. Nadworny unsuccessfully appealed his conviction to the Massachusetts Supreme Judicial Court. Commonwealth v. ____________ Nadworny, 486 N.E.2d 675 (Mass. 1985), cert. denied, 477 U.S. 904 ________ _____ ______ (1986). After the United States Supreme Court denied certiorari, Nadworny filed a petition for habeas corpus in the United States District Court for the District of Massachusetts. The district court dismissed his petition for failure to exhaust his post-conviction state remedies. On appeal from that dismissal, we reversed and remanded the case for a decision on the merits. Nadworny v. Fair, 872 F.2d 1093 (1st Cir. ________ ____ 1989). On April 5, 1991, after careful consideration of the merits of Nadworny's claims, the district court dismissed Nadworny's habeas petition and entered judgment for the respondent, Michael Fair, the Commissioner of Corrections for the Commonwealth.1 It is from that dismissal that Nadworny now appeals. Finding no error in the district court's decision, we affirm. I. DISCUSSION I. DISCUSSION ______________ In this appeal, Nadworny asserts the following four grounds for relief: (1) the district court erred in finding sufficient evidence to convict him of second degree murder; (2) the district court erred in finding no denial of due process in the state trial court's refusal to instruct on the lesser included offense of involuntary manslaughter; (3) the district court erred in finding no denial of due process in the state trial court's exclusion of evidence rebutting the prosecution's contention that certain of Nadworny's statements were indicative of his consciousness of guilt; and (4) the district court erred in finding no infringement upon his privilege against self- incrimination in the state trial court's admission of certain of Nadworny's involuntarily procured statements to the police and certain statements contained in a handwriting exemplar. We address these arguments seriatim. A. Sufficiency of Evidence A. Sufficiency of Evidence ___________________________ Nadworny first contends that the district court erred in finding a sufficiency of evidence in the record to convict him of second degree murder. In essence, Nadworny asserts that his conviction cannot stand because it rests entirely upon circumstantial evidence ____________________ 1In its published opinion, the district court delayed entering judgment for respondent until the parties had an opportunity to brief more fully one of the issues raised by Nadworny. See Nadworny v. ___ ________ Fair, 744 F. Supp. 1194, 1214-15 (D. Mass. 1990). After resolving ____ that issue, the district court entered final judgment in favor of respondent on April 5, 1991. and because the jury rejected the evidentiary inferences he believes were most reasonable. Nadworny's assertion is meritless.2 In analyzing a sufficiency of evidence claim, we must review the evidence as a whole, including all inferences that may reasonably be drawn therefrom, in the light most favorable to the government, and determine if "any rational trier of fact could have found the ___ essential elements of the crime beyond a reasonable doubt." Wright v. ______ West, U.S. , , 112 S. Ct. 2482, 2485-86 (1992) (quoting ____ ____ ___ ___ Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). _______ ________ Further, "[t]he evidence may be entirely circumstantial and the factfinder may choose among reasonable interpretations of it." United ______ States v. Plummer, 964 F.2d 1251, 1254 (1st Cir. 1992). ______ _______ Under Massachusetts law, second degree murder is defined as an unlawful killing of a human being with malice aforethought. Commonwealth v. Kane, 445 N.E.2d 598, 601 (Mass. 1983); Commonwealth ____________ ____ ____________ v. Casale, 408 N.E.2d 841, 845 (Mass. 1980). The evidence before the ______ state trial court included the following:3 1. The testimony of four witnesses that Belmonte was at Nadworny's apartment on the evening of her disappearance. 2. The testimony of three witnesses that Nadworny had acknowledged that Belmonte's death occurred in his apartment on the night of her disappearance. 3. The testimony of one witness that Nadworny had informed him that the Commonwealth's evidence included "blood stains from Lisa's body" found on his apartment floor. 4. A letter from Belmonte to Nadworny making clear that she intended to end their relationship, and that if she met with him again it would only be for the purpose of saying "goodbye." 5. The testimony of one witness who spoke with Belmonte on the afternoon of her disappearance, indicating that, upon leaving her presence, Belmonte said that she intended immediately to go over to Nadworny's apartment to say "goodbye" to him and end the relationship. ____________________ 2As the facts of this case are recorded in exhaustive detail in the opinions of the Massachusetts Supreme Judicial Court, see ___ Nadworny, 486 N.E.2d at 677-82, and the federal district court, see ________ ___ Nadworny, 744 F. Supp. at 1197-99, we will repeat only those necessary ________ for resolution of this appeal. 3We must accord the state court's factual findings a presumption of correctness. 28 U.S.C. 2254(d); Hernandez v. New York, U.S. _________ ________ ___ , , 111 S. Ct. 1859, 1869 (1991). _ ___ 6. The testimony of one witness that Nadworny told her that he "couldn't bear it if they [he and Belmonte] broke up." 7. A letter purportedly from Nadworny to Belmonte stating that he felt "used" by her. 8. Evidence suggesting that Nadworny was the only one with her when she died. 9. Evidence tending to show that, in the four months between the time Belmonte met her death and the time her body was discovered in the trunk of Nadworny's automobile, Nadworny was concealing her body. 10. Testimony that Nadworny had asked a friend to "alibi" for him. 11. Testimony that Nadworny had told inconsistent stories about Belmonte's condition on the day she disappeared and about where she was located thereafter. 12. The testimony of the pathologist who examined Belmonte's body indicating that it was extremely unlikely that she had died of natural causes and that there was no evidence of pills in her stomach or major trauma to the body. We agree with the district court that the sum total of this evidence was sufficient to allow a rational trier of fact to find that Nadworny unlawfully killed Belmonte with malice aforethought. Consequently, we affirm its conclusion that Nadworny's insufficiency claim did not merit habeas relief. B. Failure to Instruct on Lesser-Included Offense of Involuntary B. Failure to Instruct on Lesser-Included Offense of Involuntary _________________________________________________________________ Manslaughter Manslaughter ____________ Nadworny next argues that the district court erred in finding no denial of due process in the state trial court's refusal to instruct on the lesser included offense of involuntary manslaughter. This claim does not require extended discussion. In a recent case squarely on point, we held that a state trial court's refusal to instruct on a lesser included offense in a noncapital case "rarely, if ever, presents a constitutional question . . . ." Tata v. Carver, 917 F.2d 670, 672 (1st Cir. ____ ______ 1990) (quoting Pitts v. Lockhart, 911 F.2d 109, 112 (8th Cir. _____ ________ 1990), cert. denied, U.S. , 111 S. Ct. 2896 (1991)). To _____ ______ ___ ____ rise to the level of a due process violation, the refusal to instruct must "threaten[] a fundamental miscarriage of justice . . . ." Id. ___ In Tata, we found that the trial court's refusal to instruct on ____ a lesser included offense did not rise to that level. Id. at ___ 672-73. The defendant in that case was convicted under state law of trafficking in one hundred grams or more but less than two hundred grams of cocaine. Id. at 670-71. The evidence ___ introduced during the prosecution's case in chief included 111.82 grams of cocaine which had been lawfully seized from defendant's apartment. As part of his defense, defendant introduced evidence tending to show that he consumed as much as two grams of cocaine a week. The trial judge instructed the jury on the offense of trafficking in one hundred grams or more but did not instruct on the lesser included offense of trafficking in less than one ____ ____ hundred grams of cocaine. On appeal, defendant argued that the failure to so instruct violated due process because the jury could have found the lesser amount by deducting an amount for his personal use. Id. at 671. ___ We rejected the defendant's argument in Tata on several ____ grounds. First, we held that there was sufficient evidence in the record to show that the quantity of drugs seized from defendant's apartment was unsuitable for personal consumption. Id. at 672. Second, we held that the requested instruction would ___ have been inconsistent with defendant's theory of the case, namely that he never possessed the cocaine at all. Id. at 672- ___ 73. More importantly, we questioned whether an evidentiary predicate for the requested instruction even existed. Id. at ___ 672. Likewise, in the instant case, we find that the failure to instruct on involuntary manslaughter did not amount to a "fundamental miscarriage of justice." After reviewing the record, the Massachusetts Supreme Judicial Court, the final arbiter on matters of state law, found that "no view of the evidence, resolving all reasonable inferences in favor of the defendant, . . . permitted a finding of . . . involuntary . . . manslaughter." Nadworny, 486 N.E.2d at 687 (citation omitted). ________ Further, the federal district court, after reading the record in a light most generous to Nadworny, found the evidentiary predicate for an involuntary manslaughter instruction "gossamer thin." Nadworny, 744 F. Supp. at 1207. Finally, the record ________ reveals that even Nadworny's trial counsel found such an instruction unwarranted. See id. at 1204 ("As to involuntary ___ ___ manslaughter, I [Nadworny's counsel] can't see how the Court, under the present state of Massachusetts law, could give a charge allowing such a verdict. . . ."). Thus, Nadworny's present complaint that the failure to instruct resulted in a "fundamental miscarriage of justice" is unpersuasive. Accordingly, we agree with the district court's conclusion that Nadworny's due process rights were not violated by the trial court's refusal to give the requested instruction.4 C. Exclusion of Evidence Rebutting Consciousness of Guilt C. Exclusion of Evidence Rebutting Consciousness of Guilt __________________________________________________________ Nadworny's third argument is that the district court erred in finding no denial of due process in the state trial court's exclusion of certain admissible evidence. The state introduced evidence at trial that Nadworny had made statements to an individual that tended to show a consciousness of guilt. In rebuttal, Nadworny attempted to put a witness on the stand to refute that implication. The state trial judge refused to allow that testimony. According to Nadworny, this refusal constitutes reversible error. We have previously made clear, however, that "[h]abeas review does not ordinarily encompass garden-variety evidentiary rulings." Palmariello v. Superintendent of M.C.I. Norfolk, 873 ___________ _________________________________ F.2d 491, 494 (1st Cir. 1989). To warrant habeas relief, the allegedly erroneous exclusion must be "so prejudicial that it ____________________ 4Perhaps recognizing the shaky foundation upon which his "fundamental miscarriage of justice" argument rests, Nadworny spends the bulk of his brief arguing that Tata was wrongly decided. We find ____ his arguments on this question unpersuasive. Moreover, "[w]e have held, with a regularity bordering on the monotonous, that in a multi- panel circuit, newly constituted panels are, by and large, bound by prior panel decisions closely [on] point." Metcalf & Eddy, Inc. v. _____________________ Puerto Rico Aqueduct And Sewer Authority, 945 F.2d 10, 12 (1st Cir. __________________________________________ 1991), cert. granted, 60 U.S.L.W. 3482 (U.S. Mar. 9, 1992) (No. 91- _____ _______ 1010). amounts to a denial of due process." Fitzgerald v. Armontrout, __________ __________ 963 F.2d 1062, 1064 (8th Cir. 1992), petition for cert. filed, ________ ___ _____ _____ __ U.S.L.W. (U.S. Aug. 3, 1992) (No. 92-5364). ___ As pellucidly explained by the district court, Nadworny's claim does not merit habeas relief because the excluded evidence would have rebutted merely one aspect of the state's evidence on consciousness of guilt, and that aspect was itself cumulative.5 Thus, even if Nadworny is correct in his assertion that the trial judge erred in excluding this evidence, such error would not rise to the level of a due process violation. D. Admission of Evidence in Violation of His Privilege Against D. Admission of Evidence in Violation of His Privilege Against _________________________________________________________________ Self-Incrimination Self-Incrimination __________________ Nadworny's final argument is that the district court erred in finding no infringement upon his Fifth Amendment privilege against self-incrimination in the state trial court's admission of certain involuntarily procured statements to the police and certain statements contained in a handwriting exemplar.6 We disagree on both counts. 1. Nadworny's Telephonic Statements to the Police 1. Nadworny's Telephonic Statements to the Police __________________________________________________ ____________________ 5The district court noted seven other pieces of evidence which directly and forcefully demonstrated Nadworny's consciousness of guilt. See Nadworny, 744 F. Supp. 1200-01. ___ ________ 6Nadworny characterizes his claim as one brought under the Fifth Amendment. This characterization is, however, technically incorrect. As the state is the alleged wrongdoer, the Fourteenth Amendment's Due Process Clause is the proper hook upon which to hang this claim. See ___ Malloy v. Hogan, 378 U.S. 1, 6-7 (1964) (holding that the Due Process ______ _____ Clause of the Fourteenth Amendment protects individuals from state abridgement of their Fifth Amendment privilege against self- incrimination). During the evening of July 19, 1982, while state police officers were at Nadworny's parents' home as part of their investigation, Nadworny telephoned his parents. After talking with Nadworny, his mother handed the telephone to one of the officers. The officer identified himself and asked Nadworny about Belmonte. Nadworny replied: "She overdosed five months ago. I don't want to talk about it." The officer continued, however, to question Nadworny about Belmonte's whereabouts. In response, Nadworny told the officer that he did not want to go to jail, that he could not "hack it," that he needed time to think, and that he might contact the officer later. At trial, the judge allowed the prosecution to introduce the above statements during its case in chief.7 Nadworny submits that these statements amounted to an involuntarily procured confession, (understandable as "I did it, but I don't want to go to jail"), the admission of which entitles him to habeas relief. A federal court reviewing the voluntariness of statements must make a determination independent from that of the state court. Arizona v. Fulminante, U.S. , , 111 S. Ct. 1246, 1252 _______ __________ ___ ____ ___ (1991); Miller v. Fenton, 474 U.S. 104, 112 (1985). The test is ______ ______ whether the totality of circumstances supports a finding, by a preponderance of the evidence, that defendant's statements were ____________________ 7Before admitting inculpatory statements made by a criminal defendant, Massachusetts courts must make a finding that the statements were made voluntarily beyond a reasonable doubt. Commonwealth v. Day, 444 N.E.2d 384, 387 (Mass. 1983). As a result, ____________ ___ the trial court admitted these statements only after it determined beyond a reasonable doubt that the statements were made voluntarily. The court also submitted the voluntariness question to the jury, which implicitly found the statements voluntary beyond a reasonable doubt. "the product of a free and rational will." Fenton, 474 U.S. at ______ 110. Application of these principles makes short shrift of Nadworny's claim. Nadworny has pointed to no evidence in the record to show that he lost volitional control or that his will was overborne.8 Moreover, his telephonic conversation with the officer can hardly be described as a setting which was inherently coercive. At any point in this conversation, Nadworny could have ended the questioning simply by hanging up the telephone. We agree with the district court's finding that Nadworny made these statements voluntarily. 2. The Handwriting Exemplar 2. The Handwriting Exemplar ____________________________ As evidence of motive, the prosecution introduced a letter, allegedly written by Nadworny to Belmonte, containing statements which tended to show Nadworny's disappointment and anger at her for ending their relationship. This letter was authenticated by a handwriting expert whose testimony was based upon two handwriting exemplars Nadworny furnished to the state. Each of the exemplars contained a statement requiring Nadworny to indicate whether he was right or left-handed, and whether he used ____________________ 8As the only support for his assertion of involuntariness, Nadworny cites the officer's statement to him that his family was "in back of him and loved him." Nadworny characterizes this statement as evidence that the officer "coaxed, cajoled, and intentionally took advantage of Nadworny's feelings of isolation, and confusion . . . ." We agree with the district court's conclusion that, while the officer may have "exerted some subtle psychological pressure on Nadworny[,]" Nadworny, 744 F. Supp. at 1201, the officer's behavior was not so ________ coercive as to weaken Nadworny's will and render his statements involuntary. his dominant hand to pen the exemplar. Because Nadworny's submissions revealed that he was right-handed, he maintains that the exemplars were testimonial and violative of his privilege against self-incrimination. In essence, Nadworny is arguing that without knowledge of his right-handedness, the expert could not have identified the letter as one written by him. The expert's trial testimony describing the process he used to identify Nadworny's handwriting contained no references, however, to left or right-handedness. Thus, it is not clear that Nadworny's argument has any factual support. Moreover, the prosecution introduced sufficient evidence -- other than the letter -- to show that Nadworny was disturbed by Belmonte's decision to end their relationship. See Nadworny, 486 ___ ________ N.E.2d at 684. As the letter was cumulative on the question of motive, we therefore agree with the district court's conclusion that, even if erroneous, the admission of this "testimony" was harmless beyond a reasonable doubt. See Chapman v. California, ___ _______ __________ 386 U.S. 18, 22 (1967).9 ____________________ 9While we agree with the district court's conclusion that the admission of the exemplars was harmless, we note our disagreement with the reasoning relied upon by the district court in reaching that conclusion. The district court reasoned: "On this record, there is not the slightest suggestion that, had Nadworny's objection to the testimonial aspect of the exemplars been sustained, the Commonwealth would have been unable to provide an eyewitness to testify concerning which hand Nadworny had used to prepare the exemplars." Nadworny, 744 ________ F. Supp. at 1203. The record reveals, however, that the prosecution's eyewitness did testify at trial but did not mention Nadworny's left or right-handedness. Thus, it was pure speculation on the part of the district court to presume that the eyewitness would have remembered which hand Nadworny used to write the exemplars. In essence, by resting its harmless error holding on the lack of a "suggestion" in ____ __ _ ____________ the record that the Commonwealth would have been unable to prove ______ __ _____ Nadworny's right-handedness, the district court relieved the Commonwealth of its burden of proof on the authentication question. II. Conclusion II. Conclusion _______________ In sum, we find unpersuasive Nadworny's four challenges to the district court opinion. Accordingly, we affirm the district court's decision not to issue a writ of habeas corpus. We affirm. We affirm. __________