CANADY, J.,
dissenting.
Because I conclude that the majority has adopted a standard of review with respect to dispositions in delinquency cases that is unwarranted by the governing statute, I dissent.
Section 985.433(7)(b), Florida Statutes, unequivocally grants trial courts the discretion to “order placement” of a delinquent child “at a different restrictiveness level” than the level recommended by the Department of Juvenile Justice (DJJ). The exercise of such discretion under section 985.433(7)(b) is subject only to the requirement that the trial court “state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department.”
The question presented by this case is what standard of review should be used in determining whether to affirm or reverse a trial court’s decision to disregard the restrictiveness level recommended by the DJJ. Given the language of section 985.433(7)(b), the statutory context, and principles of sound judicial administration, I conclude that an abuse-of-discretion standard is the appropriate standard of review. See J.L.O. v. State, 721 So.2d 440, 442 (Fla. 5th DCA 1998) (employing abuse-of-discretion standard and recognizing that trial court “was in a better position than [appellate court] in determining the most appropriate placement”). Facts relied on by the trial court in articulating the reasons for its decision must, of course, be based on *640 competent, substantial evidence in the record before the trial court.
The Legislature has recognized that “[i]t is the policy of the State with respect to juvenile justice and delinquency prevention to first protect the public from acts of delinquency.” § 985.02(3), Fla. Stat. (emphasis added). It is also unquestionable that Florida’s juvenile justice system is designed to further rehabilitative goals. But these broad purposes of the juvenile justice system do not justify the majority’s imposition of a standard of review that effectively divests trial courts of the discretion given to them by the Legislature pursuant to section 985.433(7)(b). It is not appropriate to use broad statutory purposes as a basis for overriding a specific choice that the Legislature has made.
The reality is that disposition decisions involve weighing a wide array of circumstances which are relevant to determining “the most appropriate dispositional services in the least restrictive available setting.” § 985.03(21), Fla. Stat.; see also § 985.433(6) (setting forth criteria to be evaluated in predisposition reports). It is evident from the text of section 985.433(7)(b) that the Legislature has recognized that a large measure of discretion is appropriately afforded to juvenile court judges as they make disposition determinations. The trial court’s exercise of that discretion should be overturned only if there is an abuse of discretion. See Banks v. State, 732 So.2d 1065, 1068 (Fla.1999) (stating that trial court’s determination of whether guidelines departure sentence is “the best sentencing option for the defendant” is based on weighing of “the totality of circumstances in the case” and is “judgment call within the sound discretion of the court [which] will be sustained on review absent an abuse of discretion”).
When the trial court decides not to adopt the DJJ’s recommended disposition, the statute simply requires that the trial court articulate reasons for that decision. The Legislature could have established a disposition scheme under which it specified particular reasons that would justify a trial court’s decision to disregard the restrictiveness level recommended by the DJJ. Alternatively, the Legislature could have required that the trial court recite its consideration of particular factors specified by the Legislature or could have imposed some other specific burden on trial courts wishing to disregard the DJJ’s recommendation. The Legislature has done none of these things.
The absence of specific statutory restrictions with respect to disposition determinations points to the conclusion that the Legislature recognized that a juvenile court “must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-today experience” in juvenile dispositions. Koon v. United States, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (adopting abuse-of-discretion standard for review of guidelines departure sentences). Given the Legislature’s decision not to impose specific restrictions on disposition determinations, we should recognize that deference is owed to the “judicial actor [who] is better positioned than another to decide the issue in question.” Pierce v. Underwood, 487 U.S. 552, 560, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (quoting Miller v. Fenton, 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). A deferential standard of review is appropriate because the circumstances bearing on a juvenile disposition “involve multifarious, fleeting, special, narrow facts that utterly resist generalization.” Pierce, 487 U.S. at 561— 62, 108 S.Ct. 2541 (quoting Maurice Rosenberg, Judicial Discretion of the Trial Court, Viewed, from Above, 22 Syracuse L.Rev. 635 (1971)).
*641 The majority, however, has adopted a standard which effectively shifts discretion from the trial court- — where the statutory scheme placed the discretion — to the appellate court. The majority’s standard requires that the trial court “logically and persuasively” justify the restrictiveness level it has chosen. The appellate court will, of course, determine whether the justification offered by the trial court is sufficiently logical and persuasive. This can only mean that each disposition decision that diverges from the department’s recommendation will be subject to de novo review. Rather than applying an abuse-of-diseretion standard, under which the reasons given for a disposition would be held insufficient only if they were reasons on which no reasonable judge could rely, appellate courts will reweigh all of the relevant circumstances and make a de novo determination concerning the appropriateness of the disposition.
The majority’s standard shifts authority from a judge who has had the opportunity to personally observe the juvenile and who is in the best position to evaluate all of the relevant factors to judges whose only basis for judgment is a cold record. This standard, which no doubt results from a well-intentioned desire to protect children from unduly harsh dispositions, unjustifiably truncates the authority of juvenile court judges. In adopting this standard, the majority not only has gone beyond what is warranted by the statute but also has departed from the sound principle that “the reviewing attitude that [an appellate court] takes toward a [trial] court decision should depend upon ‘the respective institutional advantages of trial and appellate courts, not upon what standard of review will more likely produce a particular substantive result.’ ” First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 948, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (quoting Salve Regina College v. Russell, 499 U.S. 225, 233, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991)).
In addition to these issues of legislative authority and the superior perspective of trial courts, there are additional practical problems that arise from the complex and exacting standard adopted by the majority. The standard is set forth in two parts. The first part of the standard requires that the trial court “[a]rticulate an understanding of the respective characteristics of the opposing restrictiveness levels.” In doing so the trial court must address: (a) “the type of child that each restrictiveness level is designed to serve”; (b) “the potential ‘lengths of stay1 associated with each level”; and (c) “the divergent treatment programs and services available to the juvenile at these levels.” The second part of the standard adopted by the majority requires that the trial court “logically and persuasively explain why ... one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public from further acts of delinquency.” In providing this explanation, the trial court must identify significant information that “the DJJ has overlooked, failed to sufficiently consider, or misconstrued” with regard to “the child’s programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public.” Majority op. at 618.
An obvious practical problem arises from the requirement that the trial court explain why “one [restrictiveness] level is better suited to serving both the rehabilitative needs of the juvenile ... and maintaining the ability of the State to protect the public from further acts of delinquency.” There may well be tension between the goal of serving the rehabilitative needs of the child and the goal of protecting the public. Contrary to the assumption em *642 bodied in the majority’s standard, there may not be “one level [that] is better suited to serving both” goals. A choice may have to be made to give one goal priority.
Another practical problem with the standard imposed by the majority arises from the level of detail contemplated in the required “[a]rticulat[ion]” by the trial court of its “understanding of the respective characteristics of the opposing restrictiveness levels.” In addressing the multiple elements enumerated by the majority, trial courts may employ one of two general strategies. They may develop boilerplate language to be recited as appropriate. Or, they may conduct extensive fact-finding regarding the enumerated elements. This first strategy is. unlikely to provide any significant improvement in the disposition process, and the second strategy would impose an onerous burden on the juvenile courts which likely would unduly delay the processing of juvenile cases.
The detailed, complex, and strict standard adopted by the majority might be justifiable as a matter of policy. But it is not within the province of this Court to make the policy determinations on which such a standard is based. That is the responsibility of the Legislature.
Although less far-reaching, the standard adopted by the Second District Court of Appeal in M.S. v. State, 927 So.2d 1044 (Fla. 2d DCA 2006), suffers from the same basic flaw that is present in the standard adopted by the majority of this Court: it lacks a proper basis in the statute enacted by the Legislature. By focusing the disposition decision on the “needs of the child,” the standard utilized in M.S. departs from the statute. The standard both ignores the discretion afforded by the Legislature to juvenile court judges and gives short shrift to the primary policy goal of “protect[ing] the public from acts of delinquency.” § 985.02(3), Fla. Stat.
Accordingly, I would approve the Fourth District’s decision that is on review and disapprove M.S.
WELLS and POLSTON, JJ, concur.