**UNITED STATES ex rel. Tobia L. SPINA, Appellant,**

v.

**Adam McQUILLAN, Warden, Appellee.**

**No. 465, Docket 74–2285.**

United States Court of Appeals, Second Circuit.

Argued Dec. 19, 1974.

Decided July 16, 1975.

Michael Young, New York City (William J. Gallagher, The Legal Aid Society, Federal Defender Services Unit, New York City, on the brief), for appellant.

Arlene R. Silverman, Asst. Atty. Gen. of the State of New York, New York City (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for appellee.

Before FRIENDLY, TIMBERS and GURFEIN, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from an order entered November 7, 1973 in the Southern District of New York, Charles H. Tenney, *District Judge,* denying without a hearing a state prisoner's petition for a writ of habeas corpus which claimed that he had been denied his right to a speedy trial, the essential issue is whether, as his present counsel on appeal would have us believe, petitioner did in fact assert his right to a speedy trial during the twenty-six month delay between his indictment and trial.

We hold that he did not and accordingly we affirm.

## I.

On November 19, 1969, Tobia L. Spina, then a detective in the New York City Police Department, was indicted, together with Watkins T. Parry, a police lieutenant, for receiving unlawful gratuities, and conspiring to do so, while employed by the police department. Following a jury trial which began January 6, 1972, Spina and Parry were convicted on both counts.

Spina's conviction was unanimously affirmed without opinion by the Appellate Division on January 16, 1973. *People v. Spina,* 41 App.Div.2d 602, 339 N.Y.S.2d 922 (1st Dept. 1973). Leave to appeal to the New York Court of Appeals was denied on February 18, 1973. Spina remained at liberty on his own recognizance throughout this entire period until March 29, 1973, when he began serving his concurrent sentences of one year on the substantive count and three months on the conspiracy count.

On June 21, 1973, while incarcerated,[1] Spina filed the instant petition for

---

1. The fact that Spina is no longer incarcerated does not render his petition moot. *Carafas v. LaVallee,* 391 U.S. 234, 237–40 (1968).

a writ of habeas corpus. He alleged two constitutional claims: (1) that he had been denied his Sixth Amendment right to a speedy trial within the meaning of *Barker v. Wingo*, 407 U.S. 514 (1972); and (2) that he had been denied what he asserted to be his Fourteenth Amendment right to equal protection "as a result of the State and District Attorney's office manipulation of the trial calendar which placed him in a position to be discriminated against."

In support of these claims, Spina alleged that, during the twenty-six month delay between his indictment and trial, more than thirty adjournments were granted at the request of the district attorney, resulting in Spina's not being brought to trial until the final week of the Knapp Commission hearings on police corruption. He alleged that during this period "petitioner was ready for and demanded that trial begin." In a supplemental petition filed August 13, 1973, Spina alleged that this delay resulted in prejudice to him by forcing him to go deeply into debt, breaking up his marriage of twenty-one years, and causing him "health impairment and inestimable mental anguish and public scorn". Spina also alleged that the delay resulted in loss of gainful employment, denial of gainful employment in his field of endeavor, and on two occasions denial of "a high paying position" because he could not be bonded.

In opposing the petition for a writ of habeas corpus, the State alleged that Spina's claims were the same as those he previously had raised in the New York State courts. The State attached to its opposing affidavit a copy of its brief in the Appellate Division in which it had answered Spina's allegations of denial of a speedy trial.

The State's brief essentially recited that just after Spina's case was called on January 6, 1972 his counsel had made an oral motion to dismiss the indictment for failure to prosecute; that Spina's counsel had claimed at that time that the delay was due solely to the State and that at no time had Spina asked for or received an adjournment; and that Spina's counsel had claimed that Spina had been prejudiced through the unavailability of an important defense witness, Chief Albert Seedman, but that, although Seedman had testified at the trial as a character witness for Parry, Spina had not questioned him or called him as a witness.

It further appeared from the State's brief that, contrary to Spina's account of the facts, the delay in trial either was caused by or was consented to by Spina or Parry, or was due to calendar congestion. The State's brief also set forth statements by an assistant district attorney who, in response to Spina's oral motion to dismiss the indictment, had read into the record detailed notations from the case jacket.[2] After reciting these

2. The relevant portion of the transcript of proceedings before Justice Myles J. Lane in the New York County Supreme Court on January 6, 1972 reads as follows:

"Mr. Corriero [Assistant District Attorney]: Thank you, Your Honor. Your Honor, first of all I would like to clear up some of the facts. I don't think that defense counsel's statement with respect to delay is accurate, completely accurate, let's put it that way.

I was assigned this particular case in September of this year, September of '71. Prior to the case being assigned to me, Assistant District Attorney Philips handled the particular matter. He is no longer with the office.

The case arose, I believe, during the time that Assistant District Attorney Philips was on trial before Justice Murtagh in what has

been referred to as the Black Panther Case. The notations that I have on the case jacket are notations that I did not make, as of November 28th, by Assistant District Attorney Philips indicates that the case was before Justice Schweitzer.

Mr. Foner [Counsel for Spina]: What year is that?

Mr. Corriero: 1969. And it was adjourned without a date for defendants to make motions.

Then on January 23rd it again appears on the calendar in Part 38. Assistant District Attorney Weinstein then appears for Mr. Philips, who is at that point on trial before Justice Murtagh. It was Good Friday. The Court was closed, and the case was adjourned to March 30th.

notations, the State's brief pointed out that the trial court had denied Spina's motion; urged the Appellate Division to strike Spina's claim of denial of a speedy trial for failure to include in the record the minutes of any pre-trial appearances in support of such claim; and concluded that the trial court had not abused its discretion in denying Spina's motion.

■ On the basis of the foregoing, the district court filed a written opinion on November 5, 1973 denying Spina's petition. Among the findings made by the district court were the following:

"[U]ntil the commencement of the trial, petitioner's counsel made no demand for trial. Indeed, the numerous delays were either caused by petitioner's and/or Parry's counsel or were consented to by them. On the eve of trial, petitioner's attorney orally moved to dismiss the indictment be-

cause of delay in prosecution. He argued that because of the delay, petitioner would be severely prejudiced in that a 'material' witness—Albert A. Seedman—had 'disappeared'. The trial court denied the motion and the trial proceeded. It should be noted that, in the course of the trial, Mr. Seedman was called as a character witness in behalf of petitioner's co-defendant, but petitioner's counsel took no part in the examination of that witness."

The district court acknowledged that the twenty-six month delay between indictment and trial raised "the threshold question of whether petitioner was denied his right to a speedy trial." The court correctly observed, however, that under *Barker v. Wingo, supra,* 407 U.S. at 530, it was appropriate to weigh such additional factors as the reason for the delay, whether Spina in fact had been

On March 30th, Assistant District Attorney Weinstein again appeared. The case was adjourned to April 20th for motions. On April 20th Assistant District Attorney Weinstein again appeared. It was on before Justice Culkin, and it was adjourned again for motions. I believe the adjournment, however, was at the request of the People to answer the motions raised by the defense attorneys at that particular time.

On May 19th Assistant District Attorney Weinstein again appeared, and the case was adjourned pending motions. On October 23rd—excuse me, it was adjourned to October 26th. There appears to be no reason for that adjournment listed on my jacket; where on October 26th, Assistant District Attorney Conboy appeared. The matter was adjourned to January 12th for trial, consent adjourned by both sides.

The Court: What was that date?

Mr. Corriero: January 12th.

The Court: What year?

Mr. Corriero: Of 1971.

The Court: You say by consent?

. Mr. Corriero: It says on the jacket, 'Consent adjournment, both sides.'

Now on January 12th the case appeared in Part 37, Assistant District Attorney Conboy appeared. The case was adjourned to March 15th before Judge Birns for trial. It appears that Assistant District Attorney Weinstein was engaged, and there was a notation that indicated the defendants were not ready, and I don't know what the underlying facts were with respect to that.

On March 15th the case was in Part 37. Assistant District Attorney Conboy was present. The case was adjourned to March 31st, 1971, because defendant Parry's attorney was not present. The case appears in Part 37 on September 24th, 1971. I at that point was the first time that I appeared in this particular case. I had prepared the case. The case was marked on consent, ready and passed.

It was adjourned to November 15th. On November 15th I attended, and again answered the calendar call ready, and I was ready to proceed to trial. The case was adjourned, marked ready and passed because we were unable to find a part that was available at that time.

On November 23rd the case again appeared on the calendar. Again it was marked ready and passed because we were unable to find a part, and during that time the defense counsel made a motion for a stay, which was denied before Justice Murtagh, and I believe we then also came before Your Honor, and we put the case on Your Honor's calendar; however, there was another case ahead of us that lasted two weeks. We then adjourned the matter again. The People were ready to proceed, and the People have been ready to proceed to trial since at least September 24th, when I was assigned the case, and there has been no delay with respect to—from September 24th."

prejudiced by the delay, and whether he had asserted his right at any time before trial commenced. Taking these factors into account, the court concluded:

"In view of the fact that petitioner never asserted his right to a speedy trial until the trial was about to begin and in view of the fact that petitioner apparently suffered no prejudice— Seedman was never called to testify in petitioner's behalf and petitioner was free on his own recognizance during the entire period—his claim that his sixth amendment right was infringed is without merit." [3]

From the denial of Spina's petition for a writ of habeas corpus, this appeal was taken.

## II.

■ We turn directly to Spina's claim that the district court erred in denying without a hearing his petition which asserted infringement of his right to a speedy trial. A good starting point is the Supreme Court's admonition in Barker v. Wingo, supra, 407 U.S. at 532, that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." That is precisely what this case is all about.

Spina contends that his petition set forth a prima facie violation of his right to a speedy trial under Barker v. Wingo, supra. He argues that the district court erred in refusing to credit the allegations of his petition and in resolving factual issues against him by relying on the State's brief in the Appellate Division. He points to his allegations that he demanded that trial begin during the twenty-six month delay, that the delays were caused by the prosecutor and not by Spina, and that he was prejudiced. He criticizes the district court for disbelieving his allegations on the basis of statements made by the assistant district attorney at the pre-trial colloquy in the state court.

If the State's brief were the only portion of the state court proceedings before us, Spina's argument in this respect would be more persuasive. We have obtained and have carefully examined, however, the appendices which were filed in the Appellate Division by Spina and Parry. They include the docket sheets and trial transcript of Spina's case. We have combed through this record and have found nothing whatever to support Spina's claim of denial of a speedy trial.

Bearing in mind the Supreme Court's emphasis in Barker v. Wingo upon the failure to assert the right to a speedy trial, we have exercised particular care in searching the state court record with an eye toward locating any evidence that Spina affirmatively demanded a speedy trial during the twenty-six month period between his indictment and trial. We have found none.

The docket sheets which contain notations of other defense motions make no reference at all to any defense motion for a speedy trial. Although many calendar calls are recorded, there is no record whatever which indicates that Spina ever objected to an adjournment. More important, our scrutiny of the transcript satisfies us that at no point in his argument in the state trial court in support of Spina's motion to dismiss the indictment for failure to prosecute did Spina's counsel ever assert that Spina had affirmatively demanded an early trial, as Spina's counsel on the instant appeal now asserts.

Nor did Spina's brief in the Appellate Division recite that Spina ever demanded a speedy trial. Spina's failure to include any reference to such a demand in his Appellate Division brief is especially significant in light of the fact that his brief was filed in October 1972, three months

---

3. The district court also rejected Spina's claim of denial of due process through prejudicial publicity during the trial. This claim has not been raised on appeal. We therefore do not reach it except to the extent referred to below that Spina claims it demonstrates an improper motive on the part of the prosecution in delaying his trial.

after the Court in its June 1972 decision in *Barker v. Wingo* had emphasized the importance of asserting the right to a speedy trial. 407 U.S. at 532. And the Appellate Division did not render a decision on Spina's appeal until January 1973, thus allowing Spina's counsel some six months after *Barker v. Wingo* in which to file a supplemental brief pointing out his speedy trial demand if there had been any.

We have taken into consideration Spina's pro se status in the district court. His petition nonetheless is wholly inadequate to trigger a search of the record beyond the proceedings on his pre-trial motion to dismiss and the docket sheets. These records disclose nothing which would warrant a further search by the district court into the minutes of numerous pre-trial proceedings or, as a corollary, production of these minutes by the State. While even these records were not before the district court, the proceedings set forth in the State's brief in the Appellate Division, which was before the district court, essentially corroborates the conclusion we have reached based on our independent examination of the state court records.

We hold that the district court did not err in refusing to hold a hearing based on Spina's claim that he demanded a speedy trial. See *United States ex rel. Preston v. Mancusi,* 422 F.2d 940 (2 Cir. 1970).

### III.

■■ Moreover, as the district court pointed out, *Barker v. Wingo, supra,* 407 U.S. at 530–33, recognized factors other than assertion of the right to a speedy trial in determining whether that right has been infringed, i. e. such matters as the length of the delay, the reason for it and whether the defendant has been prejudiced. Despite the attempt of Spina's present counsel on appeal to fit within this framework, we hold that his petition was insufficient to require a hearing.

The length of the delay was not extraordinary. E. g., *United States v. Infanti,* 474 F.2d 522, 527 (2 Cir. 1973) (28 months not extraordinary); see also cases cited in majority and dissenting opinions in *United States v. Roberts,* 515 F.2d 642, 645 and 649 n.3 (2 Cir. 1975). As with his claim of having demanded a speedy trial, our review of the state court record convinces us that there is nothing to support Spina's bald assertion that the prosecution deliberately delayed his case until the last week of the Knapp Commission hearings for the purpose of prejudicing the jury against him. On the contrary, during pre-trial arguments, Spina's counsel agreed with the assistant district attorney that, from the early fall of 1971 to January 1972 when the trial commenced, the delay was caused by calendar congestion.

■ Nor were Spina's claims of prejudice sufficient to warrant a hearing. Except for the asserted unavailability of witnesses, his various claims that he was prejudiced by the delay between indictment and trial strike us as attributable to the fact of indictment itself rather than to the delay (e. g., loss of his job as a police detective, denial of positions because of inability to be bonded).

His claim that defense witnesses became unavailable due to the delay is wholly unconvincing. He remained at liberty on his own recognizance until the end of his appeal route in the state courts. He has never contended that he was prevented in any way from locating or keeping in touch with witnesses. See *United States v. Drummond,* 511 F.2d 1049, 1054–55 (2 Cir. 1975). Seedman, the only witness ever specified by Spina as being unavailable, actually testified at the trial; but Spina simply chose not to question him or to call him to testify on his behalf. Moreover, Spina consistently has failed both here and in the state courts, to indicate just how these witnesses would have been helpful to his defense.

In short, our independent review of the state court record leaves us with the firm conviction, which adequately corroborates the district court's conclusion,

that there is no support whatsoever for Spina's claim that he was denied his right to a speedy trial.

Affirmed.