Edgar RAMOS, Petitioner,

v.

Hans WALKER, Superintendent,
Auburn Correctional Facility,
Respondent.

No. CV 90–0815.

United States District Court,
E.D. New York.

Aug. 3, 1990.

Edgar Ramos, Auburn, N.Y., pro se.

James Catterson, Suffolk County Dist. Atty. by Margaret McPartlin, Riverhead, N.Y., for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Petitioner Edgar Ramos ("petitioner" or "Ramos"), appearing *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, petitioner's application is denied.

## BACKGROUND

Petitioner was indicted for the murder of Manuel Vidal, Sr., who had been found dead in his home on July 2, 1981, in Brentwood, New York. Ramos and another individual, Manuel Martinez, had been renting rooms in the victim's home. It was the prosecution's theory at trial that petitioner, along with Martinez, fatally stabbed Vidal following an argument which occurred when petitioner and Martinez returned home intoxicated. The prosecution established its case, in part, by evidence of certain oral admissions by petitioner. On April 21, 1982, following a jury trial, Ramos was convicted of murder in the second degree. N.Y.Penal Law § 125.25 (McKinney 1990). Thereafter, petitioner was sentenced to an indeterminate term of incarceration of twenty-five years to life.

On May 18, 1987, the appellate division affirmed the conviction, 130 A.D.2d 688, 515 N.Y.S.2d 610; leave to appeal to the New York Court of Appeals was subsequently denied. Petitioner then brought a motion to reargue his direct appeal to the appellate division, which was denied. Lastly, petitioner brought a motion to vacate judgment, pursuant to § 440.10 of the New York Criminal Procedure Law ("CPL"), asserting that his conviction was based on the perjured testimony of an expert witness. The New York Supreme Court, Special Term, denied the motion, and the appellate division denied leave to appeal.

Currently, petitioner alleges the following six grounds in support of his petition: (a) that his confession was inadmissible as

a matter of law; (b) that the prosecutor's conduct denied him a fair trial; (c) that the trial court improperly failed to strike hearsay testimony; (d) that the evidence was insufficient to show petitioner had "intent to kill"; (e) that the trial court gave confusing and erroneous instructions on accessorial liability, and (f) that his conviction was based on perjured testimony.

Respondent contends that the petition should be dismissed on the ground that petitioner failed to exhaust the remedies available to him in the state court system, in that the petitioner's claims were not presented as constitutional claims to the state court. For the reasons set forth below, this Court holds that although petitioner has exhausted his state remedies, all of the claims asserted in support of the petition are without merit.

## I. EXHAUSTION OF STATE REMEDIES

 A federal court may grant a writ of habeas corpus only when a petitioner has exhausted the available remedies in the state court system. 28 U.S.C. § 2254(b). The petitioner must have "fairly presented" every one of his federal claims to the highest state court possible. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Daye v. Atty. Gen. of New York*, 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). In order to have "fairly presented" his federal claim to the state courts, the petitioner must have informed the state court of both the factual and legal premises of the claims asserted in the federal habeas petition. *Daye*, 696 F.2d 186, 191. Furthermore, a federal district court is precluded from entertaining a "mixed" habeas corpus petition, i.e., one that includes both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

In *Daye*, the Second Circuit described several methods by which a petitioner could sufficiently alert the state courts to the constitutional nature of a claim. These include:

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194.

The present petition contains a constitutional claim which was made on direct appeal, as well as several other claims made by petitioner on the collateral attack of his conviction ("the § 440 motion"). For the reasons set forth below, this Court finds that petitioner has exhausted his state remedies.

### A. *Claim Addressed on Direct Appeal*

 On direct appeal, petitioner argued that his oral confession was involuntary and thus should have been inadmissible at trial. In his appellate brief, petitioner relied on two federal cases, *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Since both cases employ a constitutional analysis, reliance upon these cases is an acceptable method of alerting the state court to the constitutional nature of the claim. *Daye*, 696 F.2d at 192. Therefore, with respect to this claim, petitioner has exhausted his state remedies.

### B. *Motion to Reargue the Direct Appeal*

 Petitioner concedes that, on his direct appeal, he failed to alert the state court to the constitutional nature of several of the claims made in the current petition.[1] The Court notes that the *factual* bases for

---

1. Four of the grounds in the petition fall into this category. These include: alleged prosecutorial misconduct; use of inadmissible hearsay testimony by the trial court; insufficient evidence to convict; and various alleged infirmities regarding the jury instructions by the trial court.

all of the claims were alleged on direct appeal. However, as to the legal bases, petitioner claims that the state courts had a fair opportunity to assess the constitutional nature of the claims on his motion to reargue the direct appeal, made pursuant to § 470.50 of the New York Criminal Procedure Law.

On his motion to reargue, which was denied by the appellate division, petitioner cited pertinent federal cases for each of these claims, each of which in turn employed some constitutional analysis. Therefore, pursuant to *Daye*, petitioner has fairly presented the constitutional nature of these claims to the highest state court possible. *See Daye*, 696 F.2d at 194. Since the order which denied reargument is not appealable, *People v. Shorts*, 33 A.D.2d 1040, 308 N.Y.S.2d 810 (2d Dep't 1970), petitioner has exhausted his state remedies with respect to these claims.

## C. *The § 440 Motion*

■ Petitioner's remaining claim is that the conviction was predicated upon perjured testimony, a claim first asserted in petitioner's § 440 motion. Within this motion petitioner cited specific federal cases employing constitutional analysis, and also specifically alleged a violation of the fourteenth amendment. The New York Supreme Court, Special Term, denied the motion, and thereafter the appellate division denied leave to appeal. No appeal lies to the court of appeals from an order denying a motion for leave to appeal made to the appellate division. N.Y.Crim.Proc.Law § 450.15 (McKinney 1983); *see also, Sanders v. Sullivan*, 701 F.Supp. 996, 997 n. 1 (S.D.N.Y.1987). Thus, petitioner has exhausted his state remedies with respect to this claim.

For the reasons stated above, this Court concludes that petitioner has exhausted his state remedies with respect to the six grounds urged in the petition. Accordingly, the Court now turns to address the claims on their merits.

## II. THE MERITS OF PETITIONER'S CLAIMS

### A. *Involuntary Confession Claim*

■ The ultimate issue with respect to the voluntariness of petitioner's confession requires independent federal consideration in a federal habeas corpus proceeding. *Miller v. Fenton*, 474 U.S. 104, 110–12, 106 S.Ct. 445, 449–51, 88 L.Ed.2d 405 (1985). Although a federal court is in a better position to determine whether the confession was obtained in a manner consistent with the Constitution, "state-court findings [of fact] are conclusive on the habeas court if fairly supported in the record." *Id.* at 117, 106 S.Ct. at 453.

The specific findings of fact which indicate that the confession was obtained voluntarily in the case at bar can be found in the minutes of the *Dunaway* and *Huntley* hearings. According to the record, petitioner voluntarily accompanied a Detective Rodriguez to the police station. Tr. 863.[2] Prior to being interrogated, he was advised in Spanish of his constitutional rights, consistent with *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The record also reflects that at this time, petitioner was free to leave, having been neither under arrest nor restricted in any manner. Tr. 876. After agreeing to answer questions without an attorney present, petitioner confessed that he was present the night of the murder, and that he had cut the victim on the arm.

■ It is to be noted that not all seizures invoke the protection of the fourth amendment. *See Terry v. Ohio*, 392 U.S. 1, 8–11, 88 S.Ct. 1868, 1872–75, 20 L.Ed.2d 889 (1968). In the case at bar, it appears that a seizure ultimately occurred at the point when petitioner was not free to leave. *See Florida v. Royer*, 460 U.S. 491, 497–500, 103 S.Ct. 1319, 1323–1326, 75 L.Ed.2d 229 (1983). That point occurred during petitioner's interrogation, at which time he placed himself at the scene of the murder, simultaneously giving the detective probable cause to hold him for further questioning. Although it has been established that

---

**2.** "Tr." refers to the trial transcript and record in the file of this case.

one may not be held for interrogation when probable cause does not exist, *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), the fact that petitioner voluntarily accompanied the detectives and thereafter confessed to being at the scene of the murder negates any possibility that the police detained him unconstitutionally. *People v. Morales*, 42 N.Y.2d 129, 397 N.Y. S.2d 587, 590–92, 366 N.E.2d 248, 250–53 (1977), *cert. denied*, 434 U.S. 1018, 98 S.Ct. 739, 54 L.Ed.2d 765 (1978).

■ Although, as noted above, the ultimate issue of voluntariness is a legal question requiring an independent federal determination, in this case the state's findings of fact are clearly supported in the record. Furthermore, petitioner has failed to establish a constitutional violation. Consequently, this Court can find no reason to deviate from the state court's determination. Accordingly, this Court holds that petitioner's first claim is without merit.

### B. *Prosecutorial Misconduct*

■ A prosecutor's conduct results in a denial of due process when his improper statements cause substantial prejudice to the defendant. *See United States v. Bivona*, 487 F.2d 443, 444 (2d Cir.1973); *United States v. Modica*, 663 F.2d 1173, 1181 (D.C.Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). The court must weigh several factors when determining whether the prosecutor's conduct resulted in substantial prejudice, including: (a) the severity of the misconduct; (b) the measures adopted to cure the misconduct; and (c) the certainty of conviction absent the improper statements. *United States v. Parker*, 903 F.2d 91, 98 (2d Cir. 1990) (citations omitted); *Modica*, 663 F.2d at 1181.

■ It is well-established that a prosecutor should refrain from injecting personal expressions of opinion, or vouch for a witness' credibility, at trial. *See Bivona*, 487 F.2d at 445–7; *United States v. Santana*, 485 F.2d 365, 370–371 (2d Cir.1973), *cert. denied*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974); *United States v. Drummond*, 481 F.2d 62, 63–64 (2d Cir.

1973). The record appears to suggest that the prosecutor may have acted improperly during his summation. The prosecutor referred to the petitioner as a "nasty drunk", improperly suggested that an indictment had factual validity, and vouched for a detective's truthfulness. Tr. 1470–78.

Despite these arguably improper statements, the record indicates that the trial court made every effort to cure the effects of the remarks. The trial court sustained objections made by defense counsel, and the record further suggests that the jury would have convicted petitioner even if the improper statements had not been made, in light of the overwhelming evidence against petitioner. Numerous witnesses testified, and petitioner's confession not only placed him at the scene of the murder, but additionally detailed his involvement. Therefore, petitioner is unable to demonstrate that the prosecutor's conduct during summation resulted in substantial prejudice. Consequently, this Court holds that petitioner is unable to prove that this conduct denied him of a fair trial.

### C. *Admission of Hearsay Testimony*

■ Since "[n]ot every admission of inadmissible statements can be considered reversible error," this Court must determine whether the hearsay testimony admitted into evidence constituted prejudicial error. *United States v. Reynolds*, 715 F.2d 99, 104 (3d Cir.1983). As the Second Circuit has noted, "the erroneous introduction of evidence can be prejudicial even though ... there was other sufficient evidence to sustain the conviction." *United States v. Ruffin*, 575 F.2d 346, 359–60 (2d Cir.1978). The critical inquiry is whether the error influenced the jury's verdict. *Id.* at 360.

■ According to the record, on direct examination Detective Rodriguez testified that a third party had informed him that petitioner had been asked to leave his prior residence due to problems regarding alcohol consumption. Tr. 848. The trial court denied the defense counsel's objection and motion to strike as untimely, but sustained as to any further testimony. Tr. 850. It is

petitioner's contention that the admissibility of such testimony denied him a fair trial.

In light of the fact that petitioner admitted to being intoxicated on the night of the murder, this Court cannot find that the erroneously admitted testimony influenced the jury's verdict. Although the testimony *may* have led the jury to infer that petitioner had an alcohol problem, such an inference could easily have been drawn based on the prior testimony. Thus, this Court holds that the testimony at issue did not deny petitioner a fair trial.

### D. *Insufficiency of the Evidence*

 A federal habeas court must consider whether there was sufficient evidence to justify a trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 313–20, 99 S.Ct. 2781, 2785–90, 61 L.Ed.2d 560 (1979). The relevant inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 307 U.S. at 319, 99 S.Ct. at 2789 (citing *Johnson v. Louisiana,* 406 U.S. 356, 362, 92 S.Ct. 1620, 1624–25, 32 L.Ed.2d 152 (1972)).

 Applying the standard as set forth in *Jackson* to the specific facts of the instant case, this Court cannot accept petitioner's contention. A review of the record in a light most favorable to the prosecution reveals that a rational jury could have found petitioner guilty of murder in the second degree beyond a reasonable doubt. *See* N.Y. Penal Law § 125.25 (McKinney 1987).

According to the testimony of Dr. Dubey, the chief serologist in the Suffolk County Crime Laboratory, the wound petitioner confessed to have caused could not have been inflicted while the deceased was lying on the floor, but rather as the victim was being physically held up after having tried to escape his attackers. Tr. 709–711. Evidence of petitioner's intent was also supported by the testimony of Dr. Graverholz, the deputy medical examiner and pathologist, who testified that the victim's wounds were consistent with a scenario involving two assailants rather than one. Tr. 173–174, 215.

According to the evidence discussed above, this Court holds that a rational trier of fact could have reasonably found, beyond a reasonable doubt, that the petitioner had "intent to kill." Therefore, petitioner's contention that there was insufficient evidence to support his conviction is without merit.

### E. *Improper Jury Instruction*

Petitioner contends that the trial court declined to charge the jury on circumstantial evidence, and that such error caused the jury to make unwarranted inferences from the evidence. This Court finds such a contention to be without merit.

 Absent clear error by the trial court in its instructions, failure to make a timely request for, or object to, the jury instructions waives objection to the charge given. *See People v. Cadorette,* 56 N.Y.2d 1007, 453 N.Y.S.2d 638, 439 N.E.2d 353 (1982); *Edwards v. Jones,* 720 F.2d 751, 753 (2d Cir.1983). According to the record, petitioner's trial counsel affirmatively indicated that he was *not* requesting a circumstantial evidence charge, and it is to be noted that he did not object to the charge given. Tr. 1612. The record also indicates that this was done with the complete knowledge and acquiescence of petitioner. Thus, the issue not having been raised previously, it was not preserved for review. *See Cadorette,* 453 N.Y.S.2d at 638, 439 N.E.2d at 353–54.

 Petitioner's contention that the jury instruction on accessorial liability was confusing and erroneous is also without merit. According to the record, the court charged the jury that "the law requires that the people prove beyond a reasonable doubt that there was, in fact a common purpose, an enterprise." Tr. 1613. Thereafter, the jury requested a definition of "acting in concert," and the court provided one which incorporated trial counsel's request for language concerning a common scheme or plan. Tr. 1630. This Court

finds that the language used in the instructions was proper, furthermore, there is no evidence in the record to support the contention that the instructions were confusing to the jury.

### F. *Perjured Testimony*

Petitioner contends that his conviction was predicated upon the perjured testimony of an expert witness. More specifically, petitioner alleges that Dr. Dubey, then chief serologist in the Suffolk County Crime Laboratory, falsely stated his credentials during the trial. Petitioner argues that this contention is supported by the fact that five years after petitioner's conviction, Dubey pled guilty to falsely stating his credentials during numerous other trials.

In deciding whether there are legitimate grounds for a new trial this Court must determine whether it can be said, in view of the overwhelming evidence of guilt, that disclosure of the witness' true credentials would give rise to a reasonable probability that the result would have been different. *United States v. Bagley*, 473 U.S. 667, 678–82, 105 S.Ct. 3375, 3381–84, 87 L.Ed.2d 481 (1985). According to the record, Dubey testified that he had attended Rensselaer Polytechnic Institute and Long Island University in obtaining a bachelor's degree in biology, and the City University of New York for a masters degree in forensic science. Tr. 642.

After pleading guilty to the perjury counts, Dubey acknowledged both that he did not receive a bachelor's degree from Rensselaer, and that he did not have a master's degree. However, it was disclosed that Dubey had in fact attended Rensselaer, although in actual fact he received his bachelor's degree from Long Island University. Furthermore, it was revealed that Dubey had completed the course work for his masters, but had not finished his thesis. Thus, although Dubey's testimony concerning his credentials was misleading, it was not completely untrue.

In view of all the other evidence of guilt, this Court cannot find that disclosure of Dubey's true credentials would give rise to a reasonable probability that the jury's verdict would have been different. *See id.* Although Dubey's testimony was misleading, it did not impermissibly influence the jury's decision, and thus the admissibility of such testimony does not constitute ground for a new trial.

### CONCLUSION

For the reasons set forth above this Court finds that each of petitioner's claims in support of the petition are without merit. Accordingly, petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied.

SO ORDERED.