Michael **GONZALEZ**, Petitioner,

v.

**SUPERINTENDENT, SULLIVAN CORRECTIONAL FACILITY,** Respondent.

**No. CV 90–2364.**

United States District Court, E.D. New York.

April 3, 1991.

Michael Gonzalez, pro se.

James Catterson, Suffolk County Dist. Atty., by Margaret McPartlin, Riverhead, N.Y., for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Petitioner *pro se* Michael Gonzalez ("petitioner" or "Gonzalez") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

## BACKGROUND

### I. *State Proceedings*

In 1986, petitioner was convicted by a jury in the Supreme Court, Suffolk County, of robbery in the first degree and is now serving an indeterminate sentence of eight to sixteen years. His pre-trial motions for a probable cause hearing and for severance from codefendant Enrico Scalerico ("codefendant" or "Scalerico") were denied. The confessions of both petitioner and codefendant were admitted as evidence at the trial.

Petitioner appealed to the appellate division. *People v. Gonzalez*, 153 A.D.2d 589, 544 N.Y.S.2d 632 (2d Dep't 1989). That court affirmed the denial of the probable cause hearing, the denial of the severance motion, and the conviction. *Id.* at 589, 544 N.Y.S.2d at 633–34. Petitioner's appeal to the New York Court of Appeals was subsequently denied. *People v. Gonzalez*, 74 N.Y.2d 847, 546 N.E.2d 195, 546 N.Y.S.2d 1012 (1989).

In March of 1990, petitioner filed a motion to vacate in the Supreme Court, Suffolk County pursuant to § 440.10 of the Criminal Procedure Law ("C.P.L."). Petitioner alleged fraud on the part of the prosecution for failure to reveal the recantation of the statement given by a witness who testified at trial. The court denied the motion due to the unreliability of recanting testimony and because the recantation did not meet the standard of "newly discovered evidence" which would warrant a new trial. (March 12, 1990, Indictment No. 1511–85, Supreme Court, Suffolk County, Mullen, J.).

Petitioner's first habeas corpus petition was concurrently denied by this Court on the ground that petitioner's state remedies had not been exhausted since petitioner's C.P.L. § 440.10 motion was still pending in state court. (March 16, 1990 Memorandum and Order, CV 89–3863 E.D.N.Y., Wexler, J.). Petitioner subsequently exhausted his collateral state remedies on the newly-presented issues of prosecutorial fraud and recantation. The appellate division denied petitioner leave to appeal the denial of his C.P.L. § 440.10 motion. The Court of Appeals subsequently dismissed the application for appeal to that court on the ground that it was unappealable under C.P.L. § 450.90(1) due to the appellate division's denial of the motion. Petitioner's motion to reargue in the supreme court was granted on May 9, 1990, whereupon that court upheld its original decision. (May 9, 1990, Indictment No. 1511–85, Supreme Court, Suffolk County, Mullen, J.).

Currently before this Court is Gonzalez's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As petitioner has exhausted his state remedies, *see Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Atty. Gen. of New York*, 696 F.2d 186 (2d Cir.1982) (en banc), *app. after remand*, 712 F.2d 1566 (2d Cir.1983), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984), this Court turns to address the merits of the petition.

### II. *Present Petition*

Petitioner presents several issues in challenging his conviction. They are: (1) the trial court erred in determining that probable cause existed for his arrest without affording petitioner a probable cause/Dunaway hearing; (2) the trial court erred in denying petitioner's motion for severance from codefendant's cause; (3) a reversal of conviction and dismissal of the case are in the best interest of justice; (4) petitioner's right to a speedy trial was denied in the state proceedings; (5) petitioner's confession was illegally obtained and improperly admitted as evidence against him; and (6) a witness's statement was fraudulently pro-

cured by the prosecution, and recantation of it by the witness was improperly concealed from the defense by the prosecution.

## DISCUSSION

### I. *Full and Fair Opportunity to Litigate the Issue of Probable Cause*

■ Petitioner requested a pre-trial hearing on the issue of probable cause, as protected by the fourth amendment, pursuant to *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). This motion was denied by the trial court on the ground that petitioner did not advance sufficient sworn allegations to support such a hearing. (H. 34)[1] This decision was affirmed by the appellate division. *Gonzalez*, 153 A.D.2d at 589, 544 N.Y.S.2d at 633 ("supporting papers were conclusory and failed to state sufficient facts to warrant such a hearing"). Leave to appeal was denied by the Court of Appeals. *Gonzalez*, 74 N.Y.2d at 847, 546 N.E.2d at 195, 546 N.Y.S.2d at 1012. *Cf. People v. Gomez*, 67 N.Y.2d 843, 844, 492 N.E.2d 778, 779, 501 N.Y.S.2d 650, 651 (1986) (insufficient factual assertion by defense warrants summary denial of suppression motion).

The Supreme Court, in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494, 96 S.Ct. at 3052 (footnotes omitted). This conclusion was reached after deciding that the exclusionary rule was a judicially promulgated deterrent to illegal police practices, not a constitutionally mandated right. *Id.* at 486, 96 S.Ct. at 3048–49. *See also* E. Chemerinsky, Federal Jurisdiction § 15.5 at 713 (1989). The Supreme Court determined that permitting federal courts, through habeas corpus jurisdiction, to review such rules would not substantially further the deterrence meant to be effected

by them. *Stone*, 428 U.S. at 493–95, 96 S.Ct. at 3051–53.

The Second Circuit, in *Gates v. Henderson*, 568 F.2d 830, 839 (2d Cir.1977) (en banc), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978), stressed the Supreme Court's use of the word "opportunity." In *Gates*, the court determined that the New York State legislature had provided the petitioner with an "opportunity" to fully and fairly litigate his fourth amendment rights through "a statutory mechanism for the suppression of evidence...." *Id.* at 837. The Second Circuit held that the petitioner's failure to properly utilize such procedures did not amount to New York's failure "to provide the procedural devices affording [petitioner] an opportunity to raise the issue of his allegedly unlawful arrest." *Id.*

*Gates* puts the burden on the petitioner to show that the available state mechanisms violate the fourth amendment. To justify federal habeas corpus review of an alleged fourth amendment violation, the petitioner must show that the "state provides no corrective procedures at all to redress Fourth Amendment violations," *id.* at 840, or that even when the state provides the process "in fact the [petitioner] is precluded from utilizing it by reason of an *unconscionable breakdown* in that process...." *Id.* (emphasis added) (citations omitted). While the present petitioner did in fact avail himself of the state mechanism which would afford him a pre-trial probable cause hearing, the fact that his motion was not favorably entertained is not tantamount to a finding that no opportunity was available. Every denial of a motion made by a state prisoner does not amount to a deprivation of fourth amendment rights.

Petitioner's brief addresses the merits of his probable cause claim, citing state decisions which might indicate that his motion for a probable cause hearing was wrongly denied. This, however, is not an issue to be reviewed by the federal courts in deciding whether to grant a writ of habeas corpus. Such arguments on the merits were proper for presentation to the state

---

1. "H." refers to the Hearing Minutes of May 13–16, 1986.

courts entertaining the motion. Once denied at that level, it is not a reviewable subject matter for this Court, absent extenuating circumstances. *Id.* (federal court has "no authority to review the state record and grant the writ simply because [the federal court] disagree[s] with the result reached by the state court").

In this case, like in *Gates*, this Court finds no "unconscionable breakdown" in the process afforded by the state. Both the trial court and the appellate court entertained petitioner's motion for a probable cause hearing, and denied it, concluding that there were insufficient facts asserted to warrant such a hearing. Thus, in this case, petitioner was provided, as mandated by *Stone*, with a full and fair opportunity to litigate his fourth amendment claim in the state courts. The fact that petitioner was denied his request for such a hearing does not, in and of itself, affect the legitimacy of the state process. Accordingly, this Court will not consider the merits of petitioner's first claim.

## II. *Severance from Codefendant's Case*

■ Petitioner's second claim is that he was denied his constitutional right under the sixth amendment confrontation clause when he was denied his motion for severance from codefendant Scalerico's trial. Petitioner's and codefendant's confessions were admitted into evidence, and neither of them testified at trial.

Petitioner relies heavily on the fact that the appellate division decided that it was unfairly prejudicial to petitioner's codefendant to have been denied severance. *People v. Scalerico*, 140 A.D.2d 386, 527 N.Y.S.2d 567 (2d Dep't 1988). However, the same court denied petitioner's identical claim. *People v. Gonzalez*, 153 A.D.2d 589, 544 N.Y.S.2d 632 (2d Dep't 1989). The reason for the differing results is based on the nature of each confession, and the prejudice to the respective codefendant's case. Petitioner's confession was detailed and expansive, implicating both his own and Scalerico's involvement in the crime, and affirmatively claiming that Scalerico had planned it. In contrast, the confession made by Scalerico, to which petitioner objects, did not implicate petitioner in any way. The crux of Scalerico's confession was that he had tried to pass some checks stolen in the robbery. He did not confess to the commission of the crime, nor did he assert that petitioner had committed it.

The appellate division ordered a new trial for Scalerico based on the Supreme Court decision of *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). In *Cruz*, the petitioner was jointly tried with his brother/codefendant for felony murder. The trial court admitted the videotaped confession of codefendant, where he admitted having killed the man who had just shot petitioner. The codefendant did not testify, and the jury was instructed not to use the confession against petitioner. The *Cruz* Court held:

> [W]here a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him. Of course, the defendant's confession may be considered at trial in assessing whether his codefendant's statements are supported by sufficient "indicia of reliability" to be directly admissible against him (assuming the unavailability of the codefendant) despite the lack of opportunity for cross-examination, and may be considered on appeal in assessing whether any Confrontation Clause violation was harmless.

*Id.* at 193–94, 107 S.Ct. at 1719 (citations omitted).

The *Cruz* violation was found not to be harmless in Scalerico's case, due to the detailed confession given by Gonzalez to the arresting officer. *Scalerico*, 140 A.D.2d at 387, 527 N.Y.S.2d at 568. The court found that there was a possibility that Gonzalez's confession, which directly implicated Scalerico, contributed to the latter's conviction, and thus that a new trial was warranted. *Id.*

However, petitioner's case is dissimilar in that Scalerico's confession did not inculpate petitioner. Furthermore, Gonzalez's "own confession, which was admitted against him, was so detailed and expansive as to render the *Cruz* violation harmless beyond a reasonable doubt." *Gonzalez*, 153 A.D.2d at 589, 544 N.Y.S.2d at 633 (citations omitted). As set forth by the *Cruz* Court, "[a] codefendant's confession will be relatively harmless if the incriminating story it tells is different from that which the defendant himself is alleged to have told, but enormously damaging if it confirms, in all essential respects, the defendant's alleged confession." *Cruz*, 481 U.S. at 192, 107 S.Ct. at 1718. In essence, the Supreme Court found that an "interlocking" confession by a codefendant would be prejudicial to a defendant, as it would lend support to the confession that defendant himself made, which is precisely what a defendant is seeking to avoid. *Id.* In the present case, however, not only did the codefendant's confession not corroborate petitioner's own confession, but the petitioner's confession itself was found to be "overwhelming proof of his guilt." *Gonzalez*, 153 A.D.2d at 590, 544 N.Y.S.2d at 634.

Moreover, petitioner has failed to meet the heavy burden required by the Second Circuit for a defendant to overcome the denial of a severance motion. *See United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990). The *Tutino* court held that denial of severance is reversible only where "denial constitutes a 'clear abuse of [the trial court's] discretion ... [and that defendant] was so severely prejudiced by the joinder that he was denied a constitutionally fair trial' ... and that a 'miscarriage of justice' has occurred." *Id.* at 1130 (citations omitted). Petitioner has failed to make any of these required showings. Accordingly, any *Cruz* violation which may have occurred was harmless to petitioner's case and not violative of the confrontation clause of the sixth amendment.

### III. *The Interest of Justice*

■ Petitioner's third claim is that his conviction should be reversed in the interest of justice. He bases this claim on the fact that his codefendant Scalerico was granted severance from their joint trial. *People v. Scalerico*, 140 A.D.2d 386, 387, 527 N.Y.S.2d 567, 568 (2d Dep't 1988). On remand, Scalerico's indictment was dismissed, due to the prosecution's inability to secure a vital witness.

While petitioner may feel this is an unjust result, this Court does not. While the prosecution was unable to convict Scalerico due to a lack of evidence, this was not the case for petitioner because there was ample evidence to convict him absent Scalerico's confession, which, as stated above, did not inculpate Gonzalez. As a result, petitioner's motion for severance was denied, and for the same reason this Court finds that petitioner's claim that reversal is warranted in the interest of justice is without merit.

### IV. *Right to a Speedy Trial*

■ Petitioner claims that his due process right to a speedy trial, as protected by the sixth amendment, was denied to him by the state courts. While petitioner correctly states that this is a fundamental right protected by the Constitution, imposed on the states via the fourteenth amendment's due process clause, *see Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184–85, 33 L.Ed.2d 101 (1972); *Dickey v. Florida*, 398 U.S. 30, 37, 90 S.Ct. 1564, 1568–69, 26 L.Ed.2d 26 (1970), he has not alleged sufficient facts for this Court to find that he was in fact denied a speedy trial.

The Supreme Court established that the determination of whether a defendant has been denied a speedy trial is to be established on an *ad hoc* basis. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191–92. The Court, evaluating and rejecting more precise methods (i.e., a fixed-time period or the demand-waiver rule), held that the appropriate alternative "is a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* (footnote omitted). The factors to be balanced are: "[l]enght of delay, the reason for the

delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* (footnote omitted). Applying these factors to the present case, it is clear that petitioner was not deprived of his right to a speedy trial.

First, the length of the delay before petitioner's trial was less than nine months; the complaint was filed in September 1985, and the trial commenced in June of 1986. (H. 22) The Second Circuit has found that much longer delays were not violative of a defendant's sixth amendment right to a speedy trial. *See Flowers v. Warden, Connecticut Correctional Inst.,* 853 F.2d 131, 133–34 (2d Cir.) (17 month pretrial incarceration not sufficient to establish a constitutional violation), *cert. denied,* 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988), *reh'g denied,* 488 U.S. 1051, 109 S.Ct. 887, 102 L.Ed.2d 1009 (1989); *Wilson v. Henderson,* 584 F.2d 1185, 1192 (2d Cir.) (sixth amendment not violated by twenty month delay between indictment and trial), *reh'g denied,* 590 F.2d 408 (2d Cir.1978), *cert. denied,* 442 U.S. 945, 99 S.Ct. 2892, 61 L.Ed.2d 316 (1979); *United States ex rel. Spina v. McQuillan,* 525 F.2d 813, 818 (2d Cir.1975) (twenty-six month delay between indictment and trial held not to violate sixth amendment). As the *Barker* Court noted, there is no per se rule as to how long is too long; it depends on the particular facts of each case. *See Barker,* 407 U.S. at 522, 92 S.Ct. at 2187–88 (quoting *Beavers v. Haubert,* 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905)).

Second, the reasons for the delay are attributable to both the petitioner and the State. While petitioner asserts that none of the adjournments was made at his own request, (Petitioner's Brief at 20), the record (i.e., the court calendar) shows that twelve out of fourteen adjournments between October of 1985 and March of 1986 were at petitioner's request. The six adjournments prior to the commencement of the pre-trial hearings in May of 1986 were not designated as attributable to either party. The one week adjournment conceded to have been requested by the State between June 9, 1986 and the commencement of trial on June 17, 1986 was due to a family

emergency of the prosecutor. The trial court found this request fell within the ambit of permissible exceptional circumstances provided by C.P.L. § 30.30, and held that such a delay was not chargeable to the State. (Suffolk County Court calendar, Indictment No. 1511–85, File No. 51132R).

The Court notes that the State concedes that petitioner affirmatively asserted his right to a speedy trial and therefore turns to the fourth and most important consideration which is whether petitioner was prejudiced by the delay. The *Barker* Court reiterated the interests which the right to a speedy trial was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193 (footnote omitted). The Supreme Court noted that the last concern is the most important, because a defendant's inability to prepare his case thwarts the fairness of the judicial system. *Id.* Witnesses who die or disappear, or whose memories fade, may unfairly prejudice a defendant whose case relies on their testimony. This is an extremely persuasive argument for a defendant whose case has been so impaired due to an unfairly lengthy delay.

Unfortunately for the present petitioner, however, this is not the scenario. Petitioner merely asserts that his pretrial incarceration prejudiced him without stating how he was prejudiced. He does not claim that he was unable to contact any witnesses who would have bolstered his case, nor does he claim that any witnesses in his favor were unavailable at trial, or displayed faulty recollection due to the passage of time.

Balancing the four factors, it is clear that the petitioner was not denied a speedy trial. He was incarcerated for nine months between his indictment and trial, the delay attributable to adjournments by both petitioner and the State. While petitioner did assert his right to a speedy trial, this alone is not enough to outweigh the fact that his case was properly expedited through the

state court system. More importantly, petitioner has failed to show that his case was in any way impaired by the nine month interim. Accordingly, this Court denies on the merits petitioner's argument that he was denied a speedy trial.

## V. Legality of Petitioner's Confession and Its Admission Into Evidence

■ Petitioner claims that his confession was not voluntary, that it was obtained through an illegal detention and investigation, and that it should have been suppressed at trial. Respondent asserts that the pre-trial *Huntley* hearing, which addressed the issue of the voluntariness of the confession, was properly decided in that petitioner's motion to suppress was denied. *See People v. Huntley*, 15 N.Y.2d 72, 204 N.E.2d 179, 255 N.Y.S.2d 838 (1965).

The Supreme Court has decided that the issue of the voluntariness of a confession is unquestionably "a legal question requiring independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct. 445, 449, 88 L.Ed.2d 405 (1985) (citations omitted). However, the *Miller* Court also ruled that "subsidiary factual questions," such as "whether in fact the police engaged in the intimidation tactics alleged by the defendant[,] are entitled to the § 2254(d) presumption." *Id.* at 112, 106 S.Ct. at 450 (citations omitted). The Supreme Court determined that subsidiary questions are best resolved at a hearing where conflicting testimony can be evaluated and decided upon by the trier of fact. *Id.* at 117, 106 S.Ct. at 453. Such questions include the "length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings." *Id.*

The record from the *Huntley* hearing indicates that petitioner's confession was voluntary and was properly admitted as evidence against him at trial. The arresting detective testified that petitioner called him from California, returned to New York, and voluntarily went with the detective for questioning. (H. 64–66) Petitioner was subsequently given his *Miranda*

rights which he waived by submitting to questioning without counsel present. (H. 67–68) At the precinct, petitioner drew a diagram depicting the details of the commission of the robbery. (H. 73–74) Due to petitioner's alleged near-illiteracy, the detective wrote down the events of the crime as told to him by the petitioner which the petitioner signed and initialed at various points. (H. 75–77) The *Huntley* court accepted the written statement as evidence. (H. 84)

The state court findings on the aforementioned matters are "conclusive on the habeas court if fairly supported on the record...." *Miller*, 474 U.S. at 117, 106 S.Ct. at 453. Thus, this Court's duty in reviewing a petition for habeas corpus is to evaluate whether the circumstances, as found by the state court during the *Huntley* hearing, show that the petitioner's confession "was obtained in a manner consistent with the Constitution." *Ramos v. Walker*, 744 F.Supp. 422, 426 (E.D.N.Y. 1990).

The issues presented in this case are somewhat similar to those faced by this Court in *Ramos*. In *Ramos*, this Court held that "the fact that petitioner voluntarily accompanied the detectives and thereafter confessed ... negates any possibility that the police detained him unconstitutionally." *Id.* at 427 (citing *People v. Morales*, 42 N.Y.2d 129, 135–38, 366 N.E.2d 248, 250–53, 397 N.Y.S.2d 587, 590–92 (1977), *cert. denied*, 434 U.S. 1018, 98 S.Ct. 739, 54 L.Ed.2d 765 (1978)).

The Second Circuit has mandated that in determining the voluntariness of a confession, no one factor is determinative; rather, the totality of the circumstances must be evaluated. *Green v. Scully*, 850 F.2d 894, 901 (2d Cir.), *cert. denied*, 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988). The application of this test involves consideration of "three sets of circumstances: (1) the characteristics of the accused; (2) the conditions of the interrogation; and (3) the conduct of law enforcement officials." *Id.* at 901–02.

Application of this test to the present case compels a finding of voluntariness of

petitioner's confession. Petitioner was not of tender years at the time of his questioning and was apparently in good physical and mental health. Six prior convictions for assorted crimes resulting in fines, probation, and incarceration indicate that petitioner was quite familiar with the criminal justice system. (*Sandoval* hearing, p. 33–34)

The second factor outlined in *Green* is the condition of the interrogation, i.e., time, place, and availability of counsel. While petitioner did not have counsel present at the time of questioning, this is not dispositive as this was also the case in *Green*. The *Green* court found that lack of counsel did not lead to the conclusion that the prisoner's confession was in any way coerced or illegally obtained. *See id.* at 903. Rather, the court found that, having twice been read his *Miranda* rights, and twice having waived them and willfully submitting himself to uncounselled questioning, the petitioner's confession was voluntary and uncoerced. *Id.* Similarly, the present petitioner was read his rights, waived them, and voluntarily submitted to questioning. He also voluntarily drew a diagram of the crime scene and signed a written statement depicting the events of the crime. These facts warrant a finding that the conduct of the interrogation in no way compelled, coerced, or otherwise unduly influenced petitioner to make an involuntary confession.

The third factor in ascertaining voluntariness is the conduct of the law enforcement officials. The *Huntley* hearing revealed that the detective picked Gonzalez up at his mother's house and that Gonzalez voluntarily got into the car where he was not handcuffed. (H. 66) Gonzalez signed a police department form, acknowledging that his rights had been read to him, and that he voluntarily waived the right to have counsel present. (H. 68) On the way to the precinct, he confessed in detail to the crime. At the precinct, he was briefly handcuffed, but was uncuffed during the interrogation in the interview room. (H. 72) It was here that Gonzalez drew the

inculpatory diagram. He thereafter signed the three page confession, handwritten by the detective. (H. 75) There was no evidence of police brutality, coercion, or unconstitutional tactics.

Applying the *Green* factors of voluntariness of confession to the facts of the present case, this Court finds that petitioner's confession was voluntary. It did not violate any of his constitutional rights and was properly admitted against him at trial. Accordingly, this Court finds petitioner's fifth claim to be without merit.

## VI. *Recantation of Written Statement and Prosecutorial Misconduct*

 Petitioner's final claim is that the investigating detective fraudulently procured a signed witness's statement through intimidation and coercion and that the prosecution concealed the fact that the statement was taken under circumstances which would render the statement questionable. Petitioner's claim is supported by the fact that he, himself, procured a statement from the same witness three years later, which in essence recants the inculpatory statement previously elicited from her by the detective. Notably, this witness, Sandra Farina ("Farina"), who is petitioner's former girlfriend, was not questioned at trial about the contents of her statement, nor about her knowledge of petitioner's involvement in the robbery.

Petitioner lived with Farina when the crime was committed, but moved to California shortly thereafter. The investigating detective obtained a signed statement from Farina in 1985, shortly after the robbery, wherein Farina stated that petitioner gave her money to pay bills, said he was leaving for California, and that he had "robbed someone … recently." (RA. 6)[2] She also stated that she told him that she "did not want to know the details." *Id.*

Prior to the trial, Farina told the prosecution that she would not repeat the statement she had previously given implicating petitioner's involvement in the robbery. At trial, Farina was put on the stand but was

---

**2.** "RA." refers to Respondent's Appendix, submitted with Respondent's Memorandum of Law

in Opposition to the present petition, August 20, 1990.

not asked to corroborate her previous statement. The only testimony that she gave relevant to Gonzalez's petition was that when the prosecution asked her about the conduct of the investigating detective (the day she gave her statement), she said, "He was very pleasant. At the job he was a little gruff, but when he came to the house he was very nice." When asked if he harassed or intimidated her in any way, she replied, "I did not feel harassed." (T.360) [3]

In 1989, Farina signed a typed statement at the request of petitioner, which stated in essence that she was a recovering alcoholic and that she was overly relaxed and on valium when the detective took her statement three years earlier. She also stated that the detective took her spoken words out of context when writing them down, that she never said petitioner told her that he robbed anyone, and that she felt very intimidated, frightened, and stressed by the meeting with this "aggressive and overpowering person." Farina also asserted that a year later she was very surprised to see the contents of the statement the detective had allegedly taken from her. (RA. 6)

Petitioner argued these claims in the C.P.L. § 440.10 motion before the Supreme Court, Suffolk County, in 1990. The court, supported by the case law doctrine that "[t]here is no form of proof so unreliable as recanting testimony," People v. Shilitano, 218 N.Y. 161, 170, 112 N.E. 733 (1916), apparently did not give credence to Farina's second statement. The court further noted that the recantation at issue did not meet the criteria of "newly discovered evidence" within the meaning of C.P.L. § 440.10(1)(g). Most importantly, the evidence would not have changed the result of the trial. The court determined that Farina's sworn testimony at trial on the intimidation question supported the reliability of the first statement, rather than the second, where she stated she was frightened and intimidated by the "aggressive" detective. (March 12, 1990, Indictment No. 1511–85, Supreme Court, Suffolk County, Mullen, J.).

The standard for determining whether the recantation of a witness warrants a new trial is stated in *United States ex rel. Rice v. Vincent*, 491 F.2d 1326 (2d Cir.) (quoting *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928) (emphasis in original), *cert. denied*, 419 U.S. 880, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974)):

[A] new trial should be granted when,

(a) The court is reasonably well satisfied that the testimony given by the material witness is false.

(b) That without it the jury *might* have reached a different conclusion.

(c) That the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*Id.* at 1331–32. *See also United States ex rel. Sostre v. Festa*, 513 F.2d 1313, 1317 (2d Cir.) (citations omitted), *cert. denied*, 423 U.S. 841, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975).

This Court agrees with the state supreme court's determination that Farina's first statement and her trial testimony are the statements which should be given credence. As stated by the Second Circuit, "recantations of testimony given at trial are 'looked upon with the utmost suspicion.'" *Vincent*, 491 at 1332 (citations omitted). While the issue here is recantation of a pre-trial statement, and not the trial testimony itself, the underlying logic is the same. The validity of the first statement and the unreliability of the second are enhanced by the fact that at trial Farina stated under oath that she did not feel intimidated by the detective when she gave the statement.

Furthermore, the first statement given by Farina was not used against petitioner. Farina was not questioned about it at trial, nor was the statement introduced into evidence. Thus, the statement had no bearing on petitioner's conviction. This satisfies part (b) of the federal standard, i.e., that the jury could not have reached a different conclusion had the recanted testimony not

---

3. "T." refers to trial transcript, May 23, 1986.

been presented, because, in fact, it was never presented to them.

Finally, petitioner was not taken by surprise by the statement. He had knowledge of its existence during the trial, and apparently did not want to raise it at trial due to its potentially incriminating effect.

The Second Circuit has held that the due process "clause is violated 'when a credible recantation of the testimony in question would most likely change the outcome of the trial and a state leaves the conviction in place.'" *Sanders v. Sullivan,* 900 F.2d 601, 602–03 (2d Cir.1990) (citation omitted). This Court abides by that mandate; however, the facts of the present case do not fall within the ambit of the prescribed factors necessitating reversal of conviction. Primarily, neither this Court nor the state supreme court believes that the second Farina statement constitutes a "credible recantation." Not only was the statement made three years after the original statement was given, but it was also two years after Farina admits to having seen the written statement, the time when she claims she was surprised by its contents. Petitioner, himself, had access to the statement prior to trial, but did not secure the recantation until three years later. It hardly seems possible that the recantation, rather than the first statement, which is supported by the trial testimony, was a bona fide statement of the facts.

Secondly, as previously stated, the existence or nonexistence of the statement would not "most likely change the outcome of the trial." As noted, Farina's testimony at trial did not refer to the statement, nor was it admitted into evidence. The lack of effect of the statement on the outcome of the trial is further supported by the appellate division's finding that the petitioner's own confession was "overwhelming proof of his guilt." *People v. Gonzalez,* 153 A.D.2d 589, 590, 544 N.Y.S.2d 632, 634 (2d Dep't 1989).

Thus, this Court finds no merit in petitioner's sixth claim. Not only is the recantation statement unreliable and not deemed credible, but also its absence or presence did not affect petitioner's conviction in any way, based both on the fact that it was not used as evidence at trial, and also that the admitted evidence sufficiently convinced the jury of petitioner's guilt.

## CONCLUSION

Based on the foregoing, petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is hereby denied on all grounds.

SO ORDERED.