21 F.3d 427
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Jesse Eugene HARRIS, Petitioner-Appellant,
v.
Hartwell R. HATFIELD, Warden, Respondent-Appellee.
 No. 93-5826.
 United States Court of Appeals, Sixth Circuit.
 March 23, 1994.
 
 Before: KENNEDY and GUY, Circuit Judges; CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner, Jesse Eugene Harris, appeals the district court's denial of his petition for a writ of habeas corpus. Harris claims on appeal that an incriminating statement he made to law enforcement officers was not voluntary and was obtained in violation of his right to counsel and right against self-incrimination.
 
 
 2
 Upon review, we conclude that there is no merit to Harris' contention, and affirm. The magistrate judge issued a written opinion in which he carefully considered each of the arguments advanced by Harris. This opinion was adopted and approved by the district court. We affirm essentially on the basis of the magistrate judge's opinion, but write briefly for further clarification.
 
 I.
 
 3
 Harris was convicted of six counts of armed bank robbery. The trial court sentenced Harris to 40 years' incarceration on each count, with each count being enhanced by five years for using a firearm. Two of the sentences were ordered to be served consecutively.
 
 
 4
 The Tennessee Court of Criminal Appeals affirmed the finding of guilt, and the Tennessee Supreme Court denied Harris' application for permission to appeal. Harris then filed a petition for writ of habeas corpus, which the district court denied for failure to exhaust state remedies. On appeal, this court vacated the order to dismiss and remanded the case to the district court. On remand, the district court dismissed on the merits Harris' petition for a writ of habeas corpus. This appeal followed.
 
 
 5
 At each stage of these proceedings, the facts proffered by Harris differed from those proffered by the government. In a suppression hearing before the trial court, Harris had an opportunity to explore and develop his version of the facts. Harris testified at the hearing, presented witnesses to corroborate his story, and had an opportunity to cross-examine the government's witnesses. After hearing the testimony and examining the evidence, the court opted to believe the government's version. The district court agreed with these findings and held that Harris had a full and fair hearing. Similarly, having reviewed the record, we find no basis for giving anything other than complete deference to these findings of fact. See Lundy v. Campbell, 888 F.2d 467, 469 (6th Cir.1989), cert. denied, 495 U.S. 950 (1990). Moreover, although the voluntariness of a confession is not an issue of fact but a legal conclusion we review de novo, the credibility of witnesses, upon which this question often depends, falls within the category of those issues to which a presumption of correctness is to be applied. Miller v. Fenton, 474 U.S. 104, 112 (1985).
 
 
 6
 The facts, as found by the trial court and the Court of Criminal Appeals, can be summarized. Harris, a known heroin user, was arrested on August 1, 1986, on an outstanding armed robbery warrant. His arrest occurred in front of a reputed "dope house." Harris testified that he could not recall whether the arresting officer, William Louis Cunningham, informed him of his legal rights; however, Officer Cunningham testified that Harris was advised of his Miranda rights at that time.
 
 
 7
 When Harris was taken to the police station, he was put in a conference room with two officers, James Bean and Dennis Birdwell. There was testimony that Harris was again advised of his Miranda rights. Harris' girlfriend, Helena Bussey, was arrested later that morning and also was taken to the police station.
 
 
 8
 At approximately noon, upon his request, Harris spoke with an attorney, James Omer. The trial court and the Court of Criminal Appeals found that Omer did not request that the police stop the interrogation, and he indicated he was not representing either Harris or Bussey. Moreover, after Omer left, Harris initiated further conversations with the police. He admitted robbing the First American Bank and stated that, if he could get some help for Bussey, he would tell them about some of the other bank robberies.
 
 
 9
 Harris and Bussey were taken before a magistrate judge and advised of their rights. Harris then was returned to the conference room. When Assistant District Attorney General Glenn Funk arrived, Harris again was advised of his rights, and he executed a waiver form, which provided:
 
 YOUR RIGHTS
 
 10
 BEFORE WE ASK YOU ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS. YOU HAVE THE RIGHT TO REMAIN SILENT. ANYTHING YOU SAY CAN BE USED AGAINST YOU IN COURT. YOU HAVE THE RIGHT TO TALK TO A LAWYER FOR ADVICE BEFORE WE ASK YOU ANY QUESTIONS AND TO HAVE HIM WITH YOU DURING QUESTIONING. IF YOU CANNOT AFFORD A LAWYER, ONE WILL BE APPOINTED FOR YOU, IF YOU WISH. IF YOU DECIDE TO ANSWER QUESTIONS NOW WITHOUT A LAWYER PRESENT, YOU WILL STILL HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME. YOU ALSO HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME UNTIL YOU TALK TO A LAWYER.
 
 WAIVER OF RIGHTS
 
 11
 I, JESSE HARRIS, HAVE READ THIS STATEMENT (HAD STATEMENT OF MY RIGHTS READ TO ME BY DETECTIVE/OFFICER) SGT. WM. CUNNINGHAM OF MY RIGHTS AND I UNDERSTAND WHAT MY RIGHTS ARE. I AM WILLING TO MAKE A STATEMENT AND ANSWER QUESTIONS. I DO WANT A LAWYER AT THIS TIME. I UNDERSTAND AND KNOW WHAT I AM DOING. NO PROMISES OR THREATS HAVE BEEN MADE TO ME AND NO PRESSURE OR COERCION OF ANY KIND HAS BEEN USED AGAINST ME.
 
 
 12
 (App. 35) (emphasis added). Harris then gave a statement to the officers in which he admitted committing six bank robberies and detailed the facts of each offense. The officers and Funk did not see any indication that Harris was under the influence of drugs or going through withdrawal during the time in question.
 
 
 13
 Harris contends that his statement was obtained in violation of both his right to counsel and his right against self-incrimination. The trial court and the Court of Criminal Appeals found otherwise. Moreover, the magistrate judge and the district court concluded that Harris had made a knowing, intelligent, and voluntary waiver of his Miranda rights. We agree.
 
 
 14
 In Edwards v. Arizona, 451 U.S. 477 (1981), the Court held that an accused "having expressed his desire to deal with the police only through counsel, [cannot be subjected] to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Id. at 484-85 (emphasis added). Here, once Harris requested to speak with an attorney, all questioning ceased. When attorney Omer left, however, Harris initiated a conversation with the officers and expressed his desire to talk about the bank robberies without counsel present. Moreover, Harris executed a form waiving his right to counsel and his right against self-incrimination. Although the waiver form states "I do want a lawyer at this time[,]" the magistrate judge found that when the waiver was read in its entirety and in light of other testimony, it becomes clear that the quoted portion reflects a typographical omission. We have reviewed the record and agree with this finding. Each of the arresting officers and Funk testified that Harris was aware of his rights and that he did not want to talk to a lawyer at the time he made his incriminating statements. Because Harris has not proven that this finding is erroneous, we hold that he did knowingly waive his Miranda rights.
 
 
 15
 We also hold that Harris' statement was voluntary. The test for voluntariness of a confession involves three factors: (1) whether the police extorted the confession from the accused by means of coercive activity; (2) whether the police activity, if objectively coercive, was sufficient to overbear the will of the accused; and (3) whether the accused proved that his will was in fact overborne by the coercive police activity in question. McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989).
 
 
 16
 Harris cites 16 factors in support of his claim of involuntariness. See Harris' Brief at 25-27. Some of these factors, however, are based on facts that are inconsistent with the findings of the trial court. Moreover, the trial court and the Criminal Court of Appeals found no evidence that Harris was under the influence of drugs at the time he gave his statement or that he was going through withdrawal. Even if we were to assume that many of the factors Harris cites were true, such as the police goading him about letting his girlfriend be charged with crimes, this assumption still would not justify a reversal. Not every deception by the police amounts to coercion or even impropriety. See United States v. Harris, 914 F.2d 927, 933 (7th Cir.1990). Simply put, Harris has not carried his burden of proving, under the totality of the circumstances, that his will was overborne.
 
 
 17
 AFFIRMED.